MELVIN WICHELMAN v. FRED MESSNER AND OTHERS.
JOHN GLAESER AND ANOTHER, RESPONDENTS.

83 N. W. (2d) 800.

June 18, 1957—No. 36,745.

94

*Young, Kunz & Mueller* and *Sheldon S. Larson,* for appellants.
*Philip L. Scherer,* for respondent-plaintiff.
*Clinton W. Redlund, Gerald T. Carroll, Gerald T. Carroll, Jr., John*

*R. Carroll, Cohen, Wartchow & Cross, John C. Connelly, Diessner, Wurst & Bundlie, Eugene J. Farrell, Eugene L. Heck, Charles B. Howard, George R. Kodadek, Larson, Loevinger, Lindquist, Freeman & Fraser, Robert A. Levitt, James D. Olson, Roy E. J. Puelston, Strong, Strong & Tully, H. Gordon Taylor, Thompson, Hessian, Fletcher & McKasy, Everett, Thiel & Root, Garrity & Garrity, Thornton & Thornton, Gislason, Reim & Minium, Johnson & Lovrien, Wheeler, Burns & Buchanan, Barnard & Hilleren, Holmquist & Holmquist, Eastvold & Pflueger, Johanson, Winter & Lundquist, Nelson & Clemmensen, Frundt & Hibbs,* and *Cutter & Babcock,* for appellants as amici curiae.

*Edward J. Cincera, A. Laurence Davis, Morgan, Raudenbush, Morgan, Oehler & Davis, Frank G. Hodgson, Benno F. Wolff, Oppenheimer, Hodgson, Brown, Baer & Wolff, Fred H. Kueppers, C. Alfred Bergsten, Ralph Comaford, J. B. Clarkson, Youngquist, Furber, Comaford, Danforth & Clarkson, Faegre & Benson, H. C. Mackall, R. M. Crounse, Floyd E. Nelson, Fred L. Thorson, Mackall, Crounse, Moore, Helmey & Palmer, Cant, Taylor, Haverstock, Beardsley & Gray, Russell W. Lindquist, Dorsey, Owen, Barker, Scott & Barber, A. R. Pfau III, Charles H. Richter, A. Gordon Rosenmeier, J. B. Forbes, Roger Catherwood, William J. Nierengarten, Raymond B. Ondov, Philip Richardson, Paul R. Hamerston, Thomas M. McCabe, McCabe, Clure, Van Evera & Donovan, Arthur Roberts, Robert J. Gillespie,* and *John E. Harrigan,* for respondent-plaintiff as amici curiae.

MURPHY, JUSTICE.

Action to determine adverse claims and to obtain possession of certain realty by Melvin Wichelman against Fred Messner, Independent Consolidated School District No. 81 of Sibley County, Victor Glaeser, and John Glaeser. The Glaesers have interests identical to plaintiff but, having refused to join plaintiff's action, they were joined as defendants. The trial court determined the fee simple interests to be an undivided 627/648 in plaintiff, an undivided 14/648 in John Glaeser, and an undivided 7/648 in Victor Glaeser. From the judgment, defendants Fred Messner and Independent Consolidated School District No. 81

appeal.

On July 6, 1897, H. F. Hoppenstedt conveyed a parcel out of Lot 4 of his farm in Sibley County, 10 rods by 16 rods, to defendant school district's predecessor by a warranty deed, regular in form except for the following provisions:

"* * * provided nevertheless and on condition however, that said premises shall be used and occupied as and for a school house site and school grounds and that whenever such occupancy and use of the same shall cease and terminate said premises shall revert to said parties of the first part, their heirs and assigns and again become a part of and belong to Lot No. 4 above described. And the said H. F. Hoppenstedt one of the parties of the first part for himself and his heirs, executors and administrators, * * *."

The defendant school board closed the school on the site on August 16, 1946, and since that date has not used the premises for school purposes. Following a vote on May 20, 1952, by the members of the school district to sell the school land, bids were solicited. Plaintiff, on September 24, 1952, submitted a bid of $1,356 which was not accepted. Subsequently, the school district by warranty deed sold and conveyed the premises to defendant Messner, the present owner of the original Hoppenstedt farm, for $1,650.

Plaintiff then solicited the Hoppenstedt heirs and received from them releases and quitclaim deeds for which he paid each various amounts from a minimum of $1 to a maximum of $10. Prior to the commencement of this action, no form of reentry had been attempted, nor had there been any notice filed pursuant to M. S. A. 541.023. The school district remained in possession until the sale to Messner.

At the trial the defendants contended that the original conveyance from Hoppenstedt to the school district was a fee simple on condition subsequent, while the plaintiff contended that the deed expressed a determinable fee which would vest title automatically without the necessity of reentry upon discontinued use of the property for school purposes. The distinctions between these two estates are discussed at length in Consolidated School Dist. No. 102 v. Walter, 243 Minn. 159, 66 N. W. (2d) 881. Since we hold that § 541.023 applies with equal force to both

a determinable fee and a fee upon condition subsequent, further discussion of that issue is unnecessary.

We think this case is controlled by § 541.023 which specifically relates to conditions and restrictions contained in old documents.

As to the operative provisions of this act, subd. 1 states:

"As against a claim of title based upon a source of title, which source has then been of record at least 40 years, no action affecting the possession or title of any real estate shall be commenced by a person, * * * after January 1, 1948, to enforce any right, claim, interest, incumbrance or lien founded upon any instrument, event or transaction which was executed or occurred more than 40 years prior to the commencement of such action, unless within 40 years after such execution or occurrence there has been recorded in the office of the register of deeds [the required notice] * * *."

In the same subdivision the statute discusses generally the kind of interest which might be extinguished by failure to file the required notice. It states:

"* * * If such notice relates to *vested or contingent rights* claimed under a *condition subsequent or restriction* it shall affirmatively show why such *condition or restriction* is not, or has not become nominal so that it may be disregarded under the provisions of Minnesota Statutes 1945, Section 500.20(1)." (Italics supplied.)

Subd. 2, with reference to application of the act, states:

"This section shall apply to every right, claim, interest, incumbrance or lien founded upon any instrument, event or transaction 40 years old at the date hereof, or which will be 40 years old prior to January 1, 1948, except those under which the claimant thereunder shall file a notice as herein provided prior to January 1, 1948."

Subd. 4 provides for the manner of filing and recording the notices with the register of deeds and registrar of titles.

Subd. 5 states that any claimant under any instrument, event, or transaction barred by the provisions of:

"* * * this section shall be conclusively presumed to have abandoned all right, claim, interest, incumbrance or lien based upon such instru-

ment, event or transaction; and the title in the name of any adverse claimant to the real estate which would otherwise be affected thereby shall not be deemed unmarketable by reason of the existence of such instrument, event or transaction; * * *."

Subd. 6 contains exceptions which will be discussed in a subsequent paragraph.

The plaintiff contends that this statute was intended to eliminate "purely technical grounds of objection to the title" and was not intended to affect a substantial interest in real property. Counsel amici curiae for the plaintiff have by able arguments and briefs contended that the act by its own terms may properly be invoked "only by one who owns a separate and complete source of title which has been of record at least 40 years and for that period not subject to the adverse claim to be barred." They argue further that "The fundamental purpose and intent of this statute and its predecessors was and is to make secure and marketable those titles whose claims have been of record a substantial period of time, i.e., at least 40 years, as against *adverse claims* not asserted or otherwise preserved by the notice of claim." Stating the same proposition and amplifying it so as to include the precise situation involved in this suit, they argue that:

"* * * the 40-year recorded source of title which is to be protected and stabilized is a *separate* source of title of record for at least 40 years and during all of that time free of the defect or adverse claim which is asserted—not a title predicated wholly upon the instrument which contains the right or condition to be barred or extinguished."

They argue that the title of the school district was not a source of title within the protection of the statute, asserting that for 50 years its interest was subject to the condition stipulated in the deed and consequently not a source of title adverse for 40 years, but only during the period from the time the school board decided not to use the property for school purposes, until this action was brought.

The defendants assert that the limiting conditions set forth in the conveyance express a condition subsequent or restriction within the meaning of subd. 1 of the act and that the interest is conclusively presumed to have been abandoned by reason of the failure to record notice of interest as provided by subds. 4 and 5 of the act.

As will appear from the discussion to follow, much of what we say goes beyond the immediate issues raised by the appeal. This is explained by the fact that counsel amici curiae have voiced concern as to the impact of the Marketable Title Act, § 541.023. In deference to them and the considerable segment of the bar for whom they speak, we have attempted to express our views as to all the points raised. Consequently, the opinion is necessarily extended.

█. In construing the 40-year statute we are required by § 645.16 to "ascertain and effectuate the intention of the legislature" and among other matters are to consider the occasion and necessity for the law; the circumstances under which it was enacted; the mischief to be remedied; and the object to be attained, as well as the consequences of a particular interpretation. We are required by § 645.17 to keep in mind that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; that the legislature does not intend to violate the Constitution of the United States or of this state; and that the legislature intends to favor the public interest as against any private interest.

We must further keep in mind that this particular statute is an amendment of the so-called 50-year statute enacted in 1943, later amended in 1945, and again amended by L. 1947, c. 118, which is now § 541.023. The act must be construed in light of the significant fact that the legislature referred to the type of interest with which we are here concerned by making it applicable to "vested or contingent rights claimed under a condition subsequent or restriction." 17 Dunnell, Dig. (3 ed.) § 8936(b), et seq.

█ Moreover, the expressed policy of the legislature that "ancient records shall not fetter the marketability of real estate" is itself a source of law which "should not only be construed and applied liberally, but * * * should be accepted as a new point of departure for the process of judicial reasoning." 17 Dunnell, Dig. (3 ed.) § 8959, notes 47 and 48. "The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed."[1]

---

[1] Mr. Justice Holmes in Johnson v. United States (1 Cir.) 163 F. 30, 32, 18 L. R. A. (N. S.) 1194, 1195. Cf. Gooch v. Oregon Short Line R. Co.

■ We are asked to define the term "claim of title based upon a source of title, which source has been of record at least 40 years" and to identify the particular estate in land which the legislature intended to protect by the provisions of the act. In doing so we may consider the relation of § 541.023 to kindred statutes governing the subject of estates in land. 82 C. J. S., Statutes, § 365.

■ It is plain from the wording of the statute itself that the legislature intended to relieve a title from the servitude of provisions contained in ancient records which "fetter the marketability of real estate." It is also clear from the plain wording of the act that it intended the provisions to benefit a title so as to relieve it from the restriction of "vested or contingent rights" derived from events or documents granting a "condition subsequent or restriction" which occurred more than 40 years prior to the commencement of the action.

■ Applying this language to estates in real property, as defined by §§ 500.01 and 500.02, the obvious conclusion is that the legislature intended this act to apply to a fee simple ownership. In Minnesota, estates in lands are divided into estates of inheritance, estates for life, estates for years, and estates at will and by sufferance. § 500.01. Under the definition of § 500.02, "Every estate of inheritance shall continue to be termed a fee simple, or fee; and every such estate, *when not defeasible or conditional,* shall be a fee simple absolute or an absolute fee." (Italics supplied.) Since a fee simple ownership is an estate of inheritance which may be defeasible or conditional, it is the estate which benefits by the sanctions of the act. It is clear that the act was intended to relieve the fee from old conditions and restrictions which § 500.02 by definition recognizes. See, 41 Minn. L. Rev. 232. The Iowa Marketable Title Act (Iowa Code 1950, § 614.17) uses the phrase "record title" to describe the title benefited. While it is uncertain what interpretation will be given to the term "title" in that act, it has been suggested that the meaning of this term is fee simple title. See, Comment, 2 Drake L. Rev. 76, 81.

---

258 U. S. 22, 24, 42 S. Ct. 192, 193, 66 L. ed. 443, 445; South & Central American Commercial Co. v. Panama R. Co. 237 N. Y. 287, 291, 142 N. E. 666, 667; Van Beeck v. Sabine Towing Co. 300 U. S. 342, 57 S. Ct. 452, 81 L. ed. 685, 690.

■ It is important for us to note here that the statute expressly includes "vested or contingent rights claimed under a condition subsequent or restriction" among the interests which will be barred if the statutory notice is not filed. It must therefore follow that the word "title" includes not only the fee simple absolute but also the defeasible fees (§§ 500.02 and 500.07).[2]

■ It is manifest from the express policy stated by the legislature that "ancient records shall not fetter the marketability of real estate," that by specific reference to conditions subsequent or restrictions, whether mature or immature, the legislature intended to bar these lesser interests which conflict with the fee, it being the expressed intention of the legislature that those interests which have substantial value may be preserved by recordation.

■ The fee simple defeasible is defined in Restatement, Property, § 16, as follows: "An estate in fee simple defeasible is an estate in fee simple which is subject to a special limitation (defined in § 23), a condition subsequent (defined in § 24), an executory limitation (defined in § 25) or a combination of such restrictions." By interpreting the phrase "a claim of title based upon a source of title" as a recorded fee simple ownership as defined by § 500.02, a reasonable result follows. The fee simple estate is exempted from the clogs which impair its marketability. If such outstanding interests are not considered important enough to register, no action may be commenced upon them.[3] Under this inter-

---

[2]A further and even more explicit indication of the legislative assumption that this statute refers to conditions subsequent or determinable fees is found in an examination of subd. 6 of the act. In that subdivision, after excepting the title of railroad corporations derived from legislative grants from the operation of the statute, the legislature said the *exception* shall *not* include any conditions subsequent or restrictions contained in any deed of conveyance made by a railroad company. It is thus apparent that the legislature has indicated that it assumes these interests are covered generally (namely for nonrailroad interests) in the statute and must be filed to be preserved. See, also, 33 Minn. L. Rev. 54, 63, "This further illustrates the strong legislative sentiment in favor of freeing land of restrictive covenants."

[3]Perpetual rights of entry and possibilities of reverter "hinder, although they do not prevent, the use and, consequently, the alienation of the estates subject to them. Reserved, perhaps, to protect some other interest of the

pretation, as pointed out by 41 Minn. L. Rev. 232, 234, "* * * lessors, remaindermen and owners of defeasible fees will not be barred by owners of lesser interests who would lack the fee simple title necessary to invoke the act."

As was observed with reference to the Iowa act (McClain, *General Limitation of Real Estate Actions,* 6 Iowa L. Bull. 77, 88); this measure is limited in its applications to cases in which the proper showing is or can be made and its application to each particular state of facts is to be determined as those facts arise. We may assume that the legislature has provided in general terms the conditions to which the act applies, leaving to the court the problem of determining the precise situations which come within its general provisions. Aside from the observations set forth hereafter which relate to continuing estates discussed in the briefs and arguments, we do not undertake to announce a general interpretation which might be understood to apply to each precise situation which might arise with reference to the myriad problems which grow out of transactions relating to real estate. In this decision we are limiting our holding to the question of whether the Minnesota Marketable Title Act permits the record owner of a fee simple title, as defined by § 500.02, to be relieved from the burdens and restrictions outstanding against such fee, where the fee title itself is predicated upon the instrument which contains the right or condition to be extinguished.

Counsel amici curiae for the plaintiff assert that the act raises serious questions as to the status of the relative rights of parties on all instruments of record more than 40 years and make specific reference to certain continuing interests in real estate. In considering this objection we must continue to keep in mind that the statute should be given a reasonable construction in light of its stated purpose that "ancient records shall not fetter the marketability of real estate." Although the language of the statute is general, it may be limited in its operation to

---

grantor, they may become valueless to him, but yet remain encumbrances on the estate conveyed. While always releasable, it becomes increasingly difficult to procure a release, as the number of persons to whom they go by descent may greatly increase on each succession." Fraser, *Future Interests, Uses and Trusts in Minnesota,* 28 M. S. A. p. 59.

cases which may be said to fall within the mischief intended to be remedied.

50 Am. Jur., Statutes, § 307, states:

"* * * Such general words and phrases must be construed as limited to the immediate objects of the act, however wide and comprehensive they may be in their literal sense. These rules are particularly applicable where they are necessary to prevent absurd or futile results."

There are cases in which we may imply exceptions to the general provisions of the statute without being subject to the criticism of having entered the legislative field. This is particularly true where the exceptions are necessary to give effect to legislative intent.

"* * * In this connection, it has been declared that where the whole context and the circumstances surrounding the adoption of an act show a legislative intention to make an exception to the general terms of the act, the exception will be recognized by the courts." 50 Am. Jur., Statutes, § 432.

These principles will be applied in the following interpretation of the statute as it may relate to the various interests which counsel amici curiae for plaintiff feel might be extinguished by the interpretation for which the defendants contend.

*Party-wall agreements and utility easements*: The statute provides (§ 541.023, subd. 6) that persons in possession of real estate are exempt from the requirements of filing notice. Possession obviously means actual occupancy or use of part or all of the real property. Such actual (or constructive) occupancy or use is itself notice of a claim or interest which has not been abandoned or become nominal. Thus rights under a party-wall agreement which are evidenced by continual use of the party wall; utility easements which are manifested by actual use and "occupancy" of the servient estate; and right-of-way easements which are manifested by actual use or "occupancy" (consistent with the nature of the easement created) are protected even if the requirement of filing notice is not met.

*Mineral rights*: Where there is a reservation or conveyance of mineral lands severing the mineral estate from the surface estate, the minerals become a separate freehold estate of inheritance. The fee simple in the

surface may be held by one person while the fee simple in the minerals is held by a different person. Washburn v. Gregory Co. 125 Minn. 491, 147 N. W. 706, L. R. A. 1916D, 304; 36 Am. Jur., Mines and Minerals, § 36; Brown, *The Taxation of Real Estate Subject to Mortgage and Other Incumbrances,* 20 Minn. L. Rev. 347, 350. As owner of a separate fee in a separate "piece" of real property, the record owner of the mineral rights does not have to file a statutory notice. It is well established that the owner of the surface of the land and the owner of the minerals when they are severed from the surface estate have separate and distinct titles.

*Mortgages*: Recorded mortgages (securing monetary obligations payable over a term of at least 40 years), which are not barred by other statutes and which the fee owner has assumed or taken "subject to," are exempt from the requirement of filing notice under certain circumstances. Mortgages which are represented by a current active relationship with the fee owner are implicitly exempt from the requirement of filing notice. The mortgagor's affirmative act of making periodic payments to the mortgagee, when coupled with the terms of the recorded mortgage, is conclusive notice and recognition of the mortgagee's "living interest." Such an interest should be contrasted with possibilities of reverter and conditions subsequent which are of indefinite duration. The legislature may have properly assumed that these latter interests, having generally outlived the reasons for their creation, may be for the benefit of persons now deceased or successors who are disinterested in the observance of restrictions and conditions and that the interests consequently impede the full economic use of property and are contrary to public policy. As to such interests the filing of a written notice is essential to establish why the "condition or restriction is not, or has not become nominal" and that it has not been abandoned. Mortgages, on the other hand, are of definite duration; are an active relationship between persons currently interested in the performance of the mortgage agreement; facilitate the use and development of property; and are not against public policy. Current active mortgages are not "ancient records" which "fetter the marketability of real estate." Notice and recognition of the recorded mortgage as a valid living interest is inherent in the active relationship between the fee owner and the

mortgagee.[4] The filing of notice within the 40-year period after the creation of the mortgage, however, would provide more security to the mortgagee since he would not have to rely on having a sufficiently current and active relationship (a fact question) to preserve his right.

*Leases*: The fear that leasehold interests might ripen into ownership by reason of the Marketable Title Act is likewise unwarranted. See, § 504.03. Since under the interpretation we have given to the term "claim of title based upon a source of title," as meaning recorded fee simple ownership, owners of lesser interests in real estate lack the fee simple title necessary to invoke the protection of the act. 41 Minn. L. Rev. 232.

*Remainder interests*: The plaintiff argues that the interpretation contended for by the defendants would operate to defeat the interests of remaindermen and in support of his argument proposes this hypothetical situation: "By decree or conveyance, a life interest is vested in A in 1910 with remainder to B upon expiration of such life estate. A goes into and retains possession for more than 40 years. In 1955 he decides to claim adversely to B or his heirs and assigns on the basis of this

---

[4]It should be noted that these observations do not apply to ancient mortgages which do not represent a current and active relationship between the fee owner and the mortgagee. In expressing a view as to the validity of a statute barring ancient mortgages not rerecorded within a 40-year period, the Supreme Court of New Hampshire said in Opinion of the Justices, — N. H. —, 131 A. (2d) 49, 50:

"'* * * Statutes of limitation barring ancient mortgages proceed on the theory that free alienability of land is a major goal of modern real property law. Basye, Clearing Land Titles, §§ 71, 76 (1953). Since many ancient mortgages have not been discharged of record, they subsist as a cloud on the title long after the debts which they secure have become barred. 2 Glenn, Mortgages, § 141 (1943). That a mortgage given and maturing nearly a century ago may still impair marketability of the land on which it was given is dramatically illustrated by Marshall v. Francis (1954) 332 Mass. 282, 124 N. E. 2d 803, noted in 25 Boston Bar Bull. 295 (1954), in which a mortgage executed in 1863 payable in 1867 for $350 on which $300 was thereafter paid and was held to have potential vitality in 1954 so as to preclude registration of the land free from the mortgage notwithstanding that several intervening deeds and mortgages made no mention of it.' Basye, *supra*, § 71 (1956 Supp.)."

.case and so notifies B. B sues to determine adverse claims, although he is not yet in possession." On this state of facts they suggest A would prevail because he owned an adequate source of title and B's only basis of claim is a document which was of record for more than 40 years.

It seems clear to us that it would be unreasonable and inconsistent with the statute's purpose to include within the meaning of the word "title" the term for years and the life estate and thus compel the reversioner or remainderman to file the statutory notice or be barred. It cannot be seriously argued that the holder of the life estate or his tenant would have an estate of inheritance which would permit him to invoke the protection of the act. "Only those who possess a title which complies with the conditions of the statute are qualified to invoke its aid." Lytle v. Guilliams, 241 Iowa 523, 529, 41 N. W. (2d) 668, 672, 16 A. L. R. (2d) 1377. The legislature does not intend a result that is unreasonable; and it does not intend to violate the Minnesota or United States Constitutions. § 645.17(1, 3).

We conclude that, taking § 541.023 as a whole and construing the language used in it in light of the object and purpose which the legislature intended to accomplish, the term "source of title" must refer to *recorded fee simple ownership,* an estate which under § 500.02 may be "defeasible or conditional." It is the latter type of ownership, particularly, which may be impaired by stale conditions and restrictions which affect its marketability, and it is clear that the legislature intended to require those owning interests in old conditions and restrictions which burden such ownership to record notice of the continued existence of such rights or permit extinguishment of them.

The Marketable Title Act is a comprehensive plan for reform in conveyancing procedures and encompasses within its provisions the collective sanctions of (a) a curative act, (b) a recording act, and (c) a statute of limitations. It is a curative act in that it may operate to correct certain defects which have arisen in the execution of instruments in the chain of title. It is a recording act in that it requires notice to be given to the public of the existence of conditions and restrictions, which may be vested or contingent, growing out of ancient records which fetter the marketability of title (see, Klasen v. Thompson, 189 Minn. 254,

248 N. W. 817). It is as well a statute of limitations in that the filing of a notice is a prerequisite to preserve a right of action to enforce any right, claim, or interest in real estate founded upon any instrument, event, or transaction which was executed or occurred more than 40 years prior to the commencement of the action, whether such claim or interest is mature or immature and whether it is vested or contingent.

■ Curative statutes are a form of retrospective legislation which reach back on past events to correct errors or irregularities and to render valid and effective attempted acts which would be otherwise ineffective for the purpose the parties intended, particularly irregularities in conveyancing requirements. They operate to complete a transaction which the parties intended to accomplish but carried out imperfectly. Basye, Clearing Land Titles, §§ 201, 204. Such curative acts do not impair the obligation of contract. Ross v. Worthington, 11 Minn. 323 (438). Retrospective legislation in general, however, will not be allowed to impair rights which are vested and which constitute property rights. Seese v. Bethlehem Steel Co. (D. Md.) 74 F. Supp. 412, 417, affirmed (4 Cir.) 168 F. (2d) 58; Fuller v. Mohawk Fire Ins. Co. 187 Minn. 447, 450, 245 N. W. 617, 618.

■ Statutes of limitations are based on the theory that it is reasonable to require that stale demands be asserted within a reasonable time after a cause of action has accrued. See, Basye, Clearing Land Titles, § 52. In Baker v. Kelley, 11 Minn. 358 at p. 371 (480 at p. 493), we said:

"* * * Statutes of limitation * * * prescribe a period within which a right may be enforced, afterward withholding a remedy for reasons of private justice and public policy. It would encourage fraud, oppression and interminable litigation, to permit a party to delay a contest until it is probable that papers may be lost, facts forgotten, or witnesses dead. A limitation law is intended to prevent this, and such a law is uniformly held valid."[5]

See, also, Bachertz v. Hayes-Lucas Lbr. Co. 201 Minn. 171, 275 N. W. 694.

---

[5]The statement most frequently quoted on this subject is by Mr. Justice Jackson in Chase Securities Corp. v. Donaldson, 325 U. S. 304, 314, 65 S.

The constitutional prohibitions against retrospective legislation do not apply to statutes of limitation, "for such a statute will bar any right, however high the source from which it may be deduced, provided that a reasonable time is given a party to enforce his right." Meigs v. Roberts, 162 N. Y. 371, 378, 56 N. E. 838, 840; Day, *Curative Acts and Limitations Acts,* 9 U. of Fla. L. Rev. 145, 152; Basye, Clearing Land Titles, § 206; Opinion of the Justices, — N. H. —, 131 A. (2d) 49. This requirement of a reasonable time within which to assert the right, however, means that the holder of a future interest ordinarily cannot be barred by the operation of statutes of limitation until a reasonable time after he acquires the right to maintain an action to acquire possession. Simes and Smith, Law of Future Interests, §§ 1962, 1963; Basye, Clearing Land Titles, § 55.

■ What may be a reasonable time depends upon the sound discretion of the legislature in the light of the nature of the subject and purpose of the enactment, and we have said that "the courts will not inquire into the wisdom of the exercise of this discretion by the legislature in fixing the period of legal bar, unless the time allowed is manifestly so short as to amount to a practical denial of justice." Hill v. Townley, 45 Minn. 167, 169, 47 N. W. 653, 654; Note, 33 Minn. L. Rev. 54.

■ It is apparent from the recordation provisions of the 40-year statute which we are considering that the legislature did not intend to

---

Ct. 1137, 1142, 89 L. ed. 1628, 1635:

"Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. * * * They are by definition arbitrary and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control."

arbitrarily wipe out old claims and interests without affording a means of preserving them and giving a reasonable period of time within which to take the necessary steps to accomplish that purpose. The recordation provisions of the act provide for a simple and easy method by which the owner of an existing old interest may preserve it. If he fails to take the step of filing the notice as provided, he has only himself to blame if his interest is extinguished. "The constitutionality of imposing this duty would seem to have been settled beyond question by the decisions sustaining retroactive recording statutes." Scurlock, *Retroactive Legislation Affecting Interests in Land,* Mich. Legal Studies, p. 82; Klasen v. Thompson, *supra.*

It is recognized that an amendment to a recording statute which shortens or limits the time during which a recorded instrument shall be effective and provides for renewal of such instrument by rerecording or refiling is constitutional as to existing recorded instruments where a reasonable time is allowed for compliance with the statute. Vance v. Vance, 108 U. S. 514, 2 S. Ct. 854, 27 L. ed. 808; 45 Am. Jur., Records and Recording Laws, § 32. In Evans v. Finley, 166 Ore. 227, 111 P. (2d) 833, 133 A. L. R. 1318, a statute was held constitutional which provided that the effect of the recording of a chattel mortgage would cease if an affidavit of renewal was not filed within a specified time. Numerous authorities were cited in support of the holding of the Oregon court including State ex rel. v. Krahmer, 105 Minn. 422, 117 N. W. 780, 21 L. R. A. (N. S.) 157. In Jackson v. Lamphire, 28 U. S. (3 Pet.) 280, 290, 7 L. ed. 679, 683, the Supreme Court of the United States said that whether the challenged statute be "considered as an act of limitations, or one in the nature of a recording act, or as a law *sui generis"* it is immune to constitutional objections. The Oregon court in Evans v. Finley, 166 Ore. 227, 237, 111 P. (2d) 833, 837, 133 A. L. R. 1318, 1325, noted:

"* * * As a statute of limitations, it is elementary that the legislature had power to pass it; as a recording act, it imposed a condition easily complied with, and required long before the 3-year limitation would expire. * * * If the state has the power to require recording where none was necessary before, as a condition to the preservation of a lien, * * * we think that it can require a further recording to the same end,

as in the instant case, provided a reasonable time is allowed in which to comply with the statute." See, Annotation, 133 A. L. R. 1325; Opinion of the Justices, — N. H. —, 131 A. (2d) 49.[6]

■. A period of nine months was provided to file the required notice. Lesser periods than this have been held reasonable. The court cannot overrule the decision of the legislature as to the time permitted to file the notice unless the term is so short that it amounts to a practical denial of the right itself and a palpable error was committed. Kozisek v. Brigham, 169 Minn. 57, 210 N. W. 622, 49 A. L. R. 1260; State ex rel. v. Krahmer, 105 Minn. 422, 117 N. W. 780, 21 L. R. A. (N. S.) 157; 34 Am. Jur., Limitation of Actions, §§ 18, 21, 22.

Moreover it should be kept in mind that the Bar of Minnesota had knowledge of the enactment of this legislation. (See, Reprint of Program Talks from Annual Meetings, 1947, 1948, Section of Real Property Law, Minnesota State Bar Association.) It was aimed at an important legal reform. (See, Maloney, *Comments on Minnesota Laws,* 30 Minn. L. Rev. 32; Brehmer, *Limitations of Actions,* 30 Minn. L. Rev. 23; 32 M. S. A. p. 388.) The original 50-year statute was enacted in 1943, later amended in 1945, and again amended to its present form in 1947, by L. 1947, c. 118. On January 1, 1948, the provisions in the deed in question were more than 50 years old. The plaintiff's grantors on January 1, 1948, made no claim to this property and no conveyances from the heirs of Hoppenstedt were solicited until late in 1952. Plaintiff's action was started February 28, 1953. In any event, lack of notice here is not a valid consideration.

■ It has been argued that § 541.023 is unconstitutional by reason of the fact that in the first sentence of subd. 1 the clause: "As against a claim of title based upon a source of title, which source has then

---

[6]Scurlock, *Retroactive Legislation Affecting Interest in Land,* Mich. Legal Studies, p. 77, cites Myers v. Wheelock, 60 Kan. 747, 57 P. 956, as authority for this statement:

"* * * Even a recording statute which would retroactively negative, as to the immediate parties, the legal effect of existing instruments for failure to record would probably stand the test of constitutionality, provided a reasonable time were given in which to perform the additional acts necessary to the effectiveness of the instruments."

been of record at least 40 years" is so vague and ambiguous as to render it meaningless.

In considering this contention we must be guided by the following well-established rule of construction:

"* * * A statute will not be declared void for vagueness and uncertainty where the meaning thereof may be implied, or where it employs words in common use, or words commonly understood, or words previously judicially defined, or having a settled meaning in law, or a technical or other special meaning well enough known * * *, or an unmistakable significance in the connection in which they are employed. In short, legislation otherwise valid will not be judicially declared null and void on the ground that the same is unintelligible and meaningless unless it is so imperfect and so deficient in its details as to render it impossible of execution and enforcement, and is susceptible of no reasonable construction that will support and give it effect, and the court finds itself unable to define the purpose and intent of the legislature." 50 Am. Jur., Statutes, § 473.

This general rule is applied by our court. See cases cited 17 Dunnell, Dig. (3 ed.) § 8995. It is a cardinal rule of construction that, rather than pronounce a statute unconstitutional and void, the court will draw inferences from the evident intent of the legislature. State ex rel. Foot v. Bazille, 97 Minn. 11, 106 N. W. 93, 6 L. R. A. (N. S.) 732. Extreme caution should be exercised by courts before declaring a statute void and it should be upheld unless it is so uncertain and indefinite that, after exhausting all rules of construction, it is impossible to ascertain the legislative intent. See, Anderson v. Burnquist, 216 Minn. 49, 11 N. W. (2d) 776.

The policy expressly stated by the act itself that ancient records shall not fetter the marketability of real estate must be a rule and guide in determining the meaning of the term "source of title" as used in the statute. Applying this rule so as to determine the kind of "title" whose marketability the legislature desires to promote, we conclude that by use of the term "claim of title based upon a source of title," the marketability of which might be impaired by a condition subsequent or restriction, the legislature had in mind the recorded fee simple title

which may be a defeasible or conditional estate as defined by § 500.02.

The plaintiff has contended that the term "source of title" is susceptible of so many varying and conflicting definitions that it is meaningless. Citing B. W. & Leo Harris Co. v. City of Hastings, 240 Minn. 44, 59 N. W. (2d) 813, he asserts that the grantee in a stray or interloping deed might become "the absolute owner" of property. We do not think the statute lends itself to an interpretation to the effect that title may be founded on a stray, accidental, or interloping conveyance. Its object is to provide, for the recorded fee simple ownership, an *exemption* from the burdens of old conditions and restrictions which at each transfer of the property interfere with its marketability. The statute does not operate to provide a foundation for a new title. But, in view of the persuasive arguments of the counsel amici curiae, it may be of benefit to examine more closely the objects which the statute seeks to accomplish.

For § 541.023 to operate in a particular case to extinguish any interest, two basic requirements are necessary. First, the party desiring to invoke the statute for his own benefit must have a requisite "claim of title based upon a source of title, which source has then been of record at least 40 years," (i. e., a recorded fee simple title). Secondly, the person against whom the act is invoked must be one who is "conclusively presumed to have abandoned all right, claim, interest * * *" in the property (subd. 5).

There are three classes of persons against whom no one can invoke the act. They are (1) those persons who seek to enforce any right, claim, interest, encumbrance, or lien founded upon any instrument, event, or transaction which was executed or occurred *within* 40 years prior to the commencement of the action; (2) those persons who seek to enforce a claim founded on any such instrument or event which was executed or occurred *over* 40 years prior to the commencement of the action, *if they have filed proper notice* within 40 years of the execution or occurrence of the instrument, event, or transaction upon which it is founded; and (3) those excepted by subd. 6 of the act, which includes persons in possession.

In B. W. & Leo Harris Co. v. City of Hastings, *supra,* the Harris Company was in fact the record owner of the fee. While it is not

clear from the opinion that the court recognized the city's adverse possession, nevertheless, that fact was conceded for the purpose of discussing the principles of law involved. Neither party was in possession. It follows that, since Harris Company had "a claim of title based upon a source of title * * * of record at least 40 years," it was the beneficiary of the act. Since the city came within the category of that class of persons who seek to enforce a "right, claim, interest * * * founded upon [an] event [adverse possession] * * * which * * * occurred more than 40 years prior to the commencement of such action," the court held that Harris Company was entitled to the protection of the act because the city was neither in possession nor had it filed a notice in accordance with the recordation provisions of the act.

We must reject the construction suggested by counsel amici curiae for plaintiff that the 40-year period does not begin to run in favor of a determinable fee or a fee subject to a condition subsequent until after a breach of the restriction. Applying that construction to the facts of the instant case, where the restrictions were created in 1897 and broken in 1946, the 40-year period would not expire until 1986; and if a restriction were created in 1800 and not breached until 2000, the 40-year period would not expire until the year 2040. Some other statute of limitations, or adverse possession, or laches would probably operate within 40 years after breach and § 541.023 would be unnecessary. The economic reason for which the original grantor imposed the restriction in either of these cases would probably have ceased long before its breach; yet unless it is breached the restriction has an indefinite duration. We may assume that in enacting this statute the legislature adopted the view that such a restriction on the fee is probably so scattered among numerous heirs and assignees that it is almost impossible to locate them. In the case before us the plaintiff who purchased quitclaims from the heirs was himself unable to acquire the total interest. Outstanding interests of this nature are likely to have merely nuisance value 40 years after their creation. They are the type of clogs at which the provisions of the act are aimed. Obviously the policy of preventing ancient records from fettering the marketability of the fee is frustrated by the construction contended for by the plaintiff.

Plaintiff asserts that Messner did not have a sufficient "source

of title" to invoke the act. The term "source of title" must be interpreted in light of the stated policy of the act that "ancient records shall not fetter the marketability of real estate." We cannot agree with the argument of the plaintiff that the act can only be invoked by one who owns "a separate and complete source of title which has been of record at least 40 years and for that period is not subject to the adverse claim to be barred." If the Minnesota Marketable Title Act contained the same provision as the Indiana law (Burns Ind. Stat. Ann. § 2-632) there would be some force to his contention. That statute provides: "* * * This section shall mean that the record title owner shall have a marketable title of that interest in the real property which the muniments of his title purport to convey to him." One writer has said that this provision expressly excepts interests created by provisions of limitations contained in the muniments of title of the record owner. The Minnesota act (M. S. A. 541.023, subd. 1) is entirely different in that it specifically refers to "vested or contingent rights claimed under a condition subsequent or restriction" as evils intended to be eliminated in attaining the goal of free alienability of land. The plaintiff fails to point out, under the construction he suggests, how the statute would be of any real value in fostering the marketability of a fee title. It seems to us that the provision in the Indiana act defeats in large measure the very purpose of this type of legislation which is intended to relieve a chain of title from the accumulated burdens of old conditions and restrictions set forth in provisions contained in instruments making up the chain of title.

The plaintiff argues that the right of reentry or reverter is an enforceable and vested right in land and asserts that the application of the statute as between parties to the same instrument may produce consequences in violation of the contract and due process of law provisions of our state and Federal Constitutions. In Scanlan v. Grimmer, 71 Minn. 351, 74 N. W. 146, where the purchaser of real estate assumed a mortgage and took title and then attempted to repudiate the mortgage on the property he had purchased, the court held that one cannot accept the benefits conferred by a deed and repudiate the burden imposed by it. On this authority the plaintiff contends that the Marketable Title Act does not relieve the record owner of a fee simple title

from the burdens and restrictions outstanding against such fee where the fee title itself is predicated upon the instrument which contains the right or condition to be extinguished.

As we have heretofore noted, a statute of limitations necessarily deprives a person of an interest which he would be able to assert in the absence of the statute if he fails to commence action in the stated period. Marketable title acts merely require filing notice rather than commencing an action; hence they may apply to vested future interests. If § 541.023 *automatically* barred a vested right retroactively without providing an opportunity to protect that interest, the plaintiff's argument that vested substantial rights cannot be barred would have considerably more force. On the contrary, however, § 541.023 allowed nine months for any outstanding interest to be protected by the easy expediency of recording notice. No one has a vested right in any particular remedy and the legislature may change or modify the existing remedies for the enforcement and protection of the contract rights as long as an adequate remedy remains. Standard Salt & Cement Co. v. National Surety Co. 134 Minn. 121, 158 N. W. 802; State ex rel. v. Krahmer, 105 Minn. 422, 117 N. W. 780, 21 L. R. A. (N. S.) 157; Kipp v. Johnson, 31 Minn. 360, 17 N. W. 957; 11 Dunnell, Dig. (3 ed.) § 5589.

■ Three cases have been called to our attention relating to the interpretation of what are said to be comparable acts. The only one which deals with what might be called a marketable title act is that of Lane v. Travelers Ins. Co. 230 Iowa 973, 299 N. W. 553, which relates to the Iowa act, reference to which already has been made in this opinion. In discussing that act, in a decision which held that the statute operated to bar the interests of contingent remaindermen following a life estate, the Supreme Court of Iowa said (230 Iowa 978, 299 N. W. 555):[7]

"Nor are we concerned with the policy of the lawmakers in enacting this measure. We may observe, however, that there can be little doubt of the desirability of statutes giving greater effect and stability to re-

---

[7]An examination of the various marketability statutes of other states is helpful in understanding of the objects and purposes intended to be accomplished by such legislation. However, because of their varied composition, pattern, and approach to the problem they do not serve as satisfactory

cord titles. We believe it our duty to enforce this statute as written." ·

Biltmore Village v. Royal (Fla.) 71 So. (2d) 727, 41 A. L. R. (2d) 1380, held a statute unconstitutional as an impairment of contract and denial of due process, which statute declared void all reverter and forfeiture provisions in deeds and plats executed more than 21 years prior to the passage of the act. That act gave the holder of a possibility of reverter one year from its effective date to institute suit to establish or enforce such right. The court said (71 So. [2d] 729):

"* * * The trouble with such a savings clause is that it arbitrarily cuts off the right in one year unless suit is brought to enforce it. Such a saving provision affords no remedy to those situated like appellant, where breach of the covenant has not accrued, so as to actuate the enforcement of the right of reverter."

We held to the same effect in Baker v. Kelley, 11 Minn. 358 (480). However, the provisions of the Florida statute should be distinguished from those of the Minnesota Marketable Title Act in that the Minnesota act requires that the owner of the outstanding interest shall merely be required to file his notice of claim, after which the right to enforce the claim may continue to exist indefinitely. In other words, we do not have before us a statute which operates to bar the claimant's remedy before he has had an opportunity to assert it.

In connection with the jurisdiction of Florida, however, it should be noted that the supreme court of that state has held that the legislature may legitimately use a recording statute as a means of getting · rid of stale claims. In Mahood v. Bessemer Properties, Inc. 154 Fla. 710, 18 So. (2d) 775, 153 A. L. R. 1199, it was held that the aftermath of worthless contracts for the purchase of land, which were left by the collapse of the Florida real estate boom of the 1920's, justified a statute under the terms of which persons who had contracted to purchase land prior to a certain date but had not placed a deed on record or obtained a decree and were not in possession were declared to have no interest in the land unless they had given notoriety to their claims by recordation in one of the several ways specified and within six months from

---

guides to an interpretation of our statute. See, infra, footnote 9 (collecting citations to other acts).

the adoption of the statute.

In Trustees of Schools v. Batdorf, 6 Ill. (2d) 486, 130 N. E. (2d) 111, the facts were quite similar to the case before us. That case involved deeds to school districts containing a somewhat similar restrictive provision. The court held that the act providing that neither possibilities of reverter nor rights of entry or reentry for breach of condition subsequent, where condition has not been broken, shall be valid for a longer period than 50 years from the date of creation of the condition or possibility of reverter, was not unconstitutional on the grounds that it was an ex post facto law and in violation of the due process clauses of the state and Federal constitutions. U. S. Const. Amend. XIV, § 1; U. S. Const. art. I, § 10.

While the Illinois court stated that (6 Ill. [2d] 492, 130 N. E. [2d] 115) "a more sensitive treatment of the problem" might have been considered, it indicated that the fostering marketability of title is sufficient social and economic reason for retroactively barring these reverter interests. Since the Illinois statutes automatically extinguish an interest 50 years old, without permitting an opportunity to preserve such interests, this authority should be distinguished on the same basis as set forth in our discussion of the Florida case.

It is apparent that the Illinois authority goes much further than is necessary for us to go in upholding § 541.023. The statute before us does not operate to automatically terminate conditions already in existence. It is in part a statute of limitations, except that it merely requires record notice to be filed within a stated period rather than requiring that an action be commenced to assert any outstanding interest.

It appears further that the constitutionality of the Minnesota statute is preserved by the provisions exempting persons in "possession of real estate" from the requirement of filing notice and allowing persons not in possession a reasonable time to file statutory notice. See, Aigler, *Constitutionality of Marketable Title Acts,* 50 Mich. L. Rev. 185; 38 Minn. L. Rev. 285; Hammon v. Hatfield, 192 Minn. 259, 256 N. W. 94.

While the plaintiff admits that he and his grantors were not in actual possession of the premises prior to the commencement of the action, he contends that they had constructive possession of vacant

land so as to bring themselves within the provisions of subd. 6 which except from the statute rights of persons in possession. Holding that the possession to which the statute referred is the same type of possession which constitutes constructive notice under the real estate recording act, § 507.34, we stated in B. W. & Leo Harris Co. v. City of Hastings (240 Minn. 49, 59 N. W. [2d] 816):

"* * * In our opinion it [possession] must be present, actual, open, and exclusive and must be inconsistent with the title of the person who is protected by this section. It cannot be equivocal or ambiguous but must be of a character which would put a prudent person on inquiry."

■ It has been suggested that § 500.20(2), the 30-year statute of limitations relating to covenants, conditions, or restrictions, might conflict with § 541.023, the Marketable Title Act, so as to render the latter unconstitutional as being vague. Section 500.20(1) merely applies to conditions that have become nominal. Subd. 2 limits the duration of conditions "hereafter created" to 30 years. Neither subdivision applies to bar substantial interests which were created long before the enactment of § 500.20(1) and which now fetter the marketability of title. The policy of § 541.023 is to require such interests to be recorded again by filing notice. Section 541.023 also assists the operation of § 500.20 by requiring notice filed thereunder to state affirmatively why such conditions have not become nominal. (If nominal, the condition is barred by § 500.20 even if it is filed under § 541.023.) Hence, the two statutes complement each other rather than conflicting with each other.

Where two statutes do conflict "the law latest in date of final enactment * * * shall prevail" but "the two shall be construed, if possible, so that effect may be given to both." § 645.26. Repeal by implication is not favored unless the latter statute fully covers the subject of the prior one and is manifestly inconsistent with it. State v. Northwest Linseed Co. 209 Minn. 422, 297 N. W. 635; 17 Dunnell, Dig. (3 ed.) § 8927. The Marketable Title Act, having been enacted after § 500.20, would not be unconstitutional even if it did conflict with § 500.20.

■ Are the exceptions set forth in subd. 6 of the act so arbitrary and discriminatory as to constitute class or special legislation forbidden

by Minn. Const. art. 1, § 2, and art. 4, § 33? This objection is directed at the provision which states that the act "shall not impair the record title or record interest, or title obtained by or through any congressional or legislative grant, of any railroad corporation or other public service corporation or any trustee or receiver thereof or of any educational or religious corporation * * * nor shall this section require the filing of any notice * * * as to any undischarged mortgage or deed of trust executed by any such corporation or any trustee or receiver thereof * * *."[8] Where exemptions from the operation of general laws are made applicable to persons of the same class similarly situated, such provisions are not invalid as granting special privileges or immunities. 16A C. J. S., Constitutional Law, § 465. The constitutional prohibition against special legislation does not prevent the legislature from dividing a subject into classes and a classification made pursuant to a public purpose which has a rational basis upon any conceivable state of the facts, although the court does not perceive all the facts justifying the classification is not invalid. The responsibility for such classification rests primarily with the legislature and will be held proper if (a) the classification applies to and embraces all who are similarly situated with respect to conditions or wants justifying appropriate legislation; (b) the distinctions are not manifestly arbitrary or fanciful but are genuine and substantial so as to provide a natural and reasonable basis justifying the distinction; and (c) there is an evident connection between the distinctive needs peculiar to the class and the remedy or regulations therefor which the law purports to provide. Loew v. Hagerle Brothers, 226 Minn. 485, 33 N. W. (2d) 598; State v. Marcus, 210 Minn. 576, 299 N. W. 241; State v. LeFebvre, 174 Minn. 248, 219 N. W. 167; General Mills, Inc. v. Div. of Employment and Security, 224 Minn. 306, 28 N. W. (2d) 847.

---

[8]Section 541.023 is the only Marketable Title Act that excepts charitable institutions, but this exception is not uncommon in ordinary statutes of limitation. Basye, Clearing Land Titles, § 53. The marketable title acts of several states except railroad and public service corporations under certain circumstances. Id. c. 9. Four other states including Michigan, North Dakota, South Dakota, and Wisconsin have statutes containing a somewhat similar exception.

In Boston & Albany Railroad v. Reardon, 226 Mass. 286, 290, 115 N. E. 408, 410, the court, in considering a statute which provided that railroad property may not be acquired by adverse possession by abutting owners, held that such statute did not contravene the constitutional prohibition against class legislation and observed: "The real estate of railroads is in a sense impressed with a public use. Heavy obligations are imposed on them. Their operation to a considerable extent is regulated by public authorities. The real estate of such corporations may in the respect provided by the instant statute be protected against invasion by adverse possession without violation of the fundamental law." The legislature could determine that the nature of the ownership of real estate acquired by the named institutions through congressional or legislative grant constituted a basis for a reasonable classification for exempting them from the provisions of the act.

The following appears to be the controlling authority with reference to exceptions in recording acts:

"* * * The time and manner of their operation, *the exceptions to them,* and the acts from which the time limited shall begin to run, will generally depend on the sound discretion of the legislature, according to the nature of the titles, the situation of the country, and the emergency which leads to their enactment. * * * [Italics supplied.]

"* * * Whether it is considered as an act of limitations, or one in the nature of a recording act, or as a law *sui generis,* * * * we are unanimously of opinion, that it is not a law which impairs the obligation of a contract; * * *." Jackson v. Lamphire, 28 U. S. (3 Pet.) 280, 290, 7 L. ed. 679, 683; 45 Am. Jur., Records and Recording Laws, § 30, notes 19 and 20; N. P. Ry. Co. v. Townsend, 190 U. S. 267, 23 S. Ct. 671, 47 L. ed. 1044.

There is nothing to indicate here that the legislature acted arbitrarily in classifying the exceptions in this particular act so that persons similarly situated were arbitrarily treated differently or that the legislature abused its authority.

An examination of the various marketable title acts[9] indicates

---

[9]Michigan—Michigan Comp. Laws 1948, § 565.101; Nebraska—Nebraska Rev. Stat. §§ 76-288 to 294; Iowa—Iowa Code 1950, § 614.17; Wisconsin—

that they were intended to operate as statutes of limitation to bar all interests, including vested future interests, if proper notice is not filed, as well as to correct irregularities that can be reached by pure curative statutes. The language of our statute itself supports this view. Basye, Clearing Land Titles, § 171, et seq.

Yielding to the demand to solve the problems created by restrictions unlimited in time, a number of marketable title acts have been passed by various states. Such limiting statutes are considered vital to all who are engaged in or concerned with the conveyance of real property. They proceed upon the theory that the economic advantages of being able to pass uncluttered title to land far outweigh any value which the outdated restrictions may have for the person in whose favor they operate. These statutes reflect the appraisal of state legislatures of the "actual economic significance of these interests weighed against the inconvenience and expense caused by their continued existence for unlimited periods without regard to altered circumstances." Trustees of Schools v. Batdorf, 6 Ill. (2d) 486, 492, 130 N. E. (2d) 111, 115; see, 43 Ill. L. Rev. 90. They must be construed in the light of the public good in terms of more secure land transactions which outweighs the burden and risk imposed upon owners of old outstanding rights to record their interests.

Reversed.

The opinion filed herein August 10, 1956, is hereby withdrawn and the foregoing opinion is substituted in lieu thereof.

---

Wisconsin Stat. § 330.15; South Dakota—L. 1947, c. 233; North Dakota—North Dakota Rev. Code, 1953 Supp. c. 47-19A; Indiana—Burns Ind. Stat. Ann. §§ 2-628 to 638; Illinois—Ill. Ann. Stat. c. 83, § 10a.