Harry ANDREWS, et al., Respondents,

v.

Patricia Mary BENSON,
et al., Appellants,

William Cooley, et al., Defendants.

No. C6–91–693.

Court of Appeals of Minnesota.

Oct. 22, 1991.

Review Denied Dec. 23, 1991.

Eric J. Magnuson, Robert B. Jaskowiak, Rider, Bennett, Egan & Arundel, Minneapolis, for respondents.

Christopher J. Dietzen, Daniel W. Voss, Larkin, Hoffman, Daly & Lindgren, Bloomington, for appellants.

Considered and decided by DAVIES, P.J., and PARKER and FOLEY, JJ.

## OPINION

DAVIES, Judge.

The trial court granted summary judgment, holding that the statutory right to termination of protective covenants in 30 years had vested upon creation of the covenants in 1957 and that the covenants were not extended by the repeal of Minn.Stat. § 500.20, the 30–year law, in 1982. We reverse and remand.

## FACTS

All the parties in this case own property in an area of Wayzata which fronts on Meeting Street, a private road jointly maintained by the parties. Appellants dispute respondents' right to subdivide their lots notwithstanding protective covenants prohibiting development.

The protective covenants at issue, signed on September 20, 1957, restricted use of the parcels to residential purposes, limited the number and type of buildings to be placed on the parcels, provided for the maintenance of Meeting Street and made other restrictions. These covenants were filed with the Registrar of Titles on December 3, 1957. At the time these covenants were entered into, Minn.Stat. § 500.20, subd. 2 (1956), provided that such cove-

nants would cease to be valid 30 years from the date of their adoption; nonetheless, these covenants were written as if they were perpetual. In 1982, the 30-year law was repealed, so the passage of the thirtieth year for these covenants in 1987 appeared to be without its former significance.

Respondents started this lawsuit, however, seeking a determination that the restrictive covenants in fact had expired as of 1987. On January 14, 1991, the trial court granted summary judgment to respondents, holding that rights to the termination of the protective covenants vested when the covenants were adopted in 1957 and, as a result, the termination rights, which matured in 1987, were not affected by the repeal of Minn.Stat. § 500.20, subd. 2, in 1982. Appellants challenge this application of the law.[1]

As an additional complication, because of a lawsuit, a notation had been entered on the certificates of title in 1960 indicating that the "restrictions expire on September 20, 1987 as shown on Doc. No. 63750."

## ISSUES

1. Did the trial court err in determining the effect of the repeal of Minn.Stat. § 500.20, subd. 2, in 1982?

2. Did the trial court err in holding that respondents had a right to rely on the notation in their certificates of title stating that the restrictions would expire in 1987?

3. Did the trial court err in not reaching the effect of the enactment of Minn.Stat. § 500.20, subd. 2a, in 1988?

## ANALYSIS

■ In an appeal from a summary judgment, this court must determine whether (1) there are any genuine issues of material fact and (2) whether the trial court erred in applying the law. *Offerdahl v. University of Minnesota*, 426 N.W.2d 425,

427 (Minn.1988). The court must take the view of the evidence most favorable to the party against whom summary judgment has been granted. *Id.*

■ 1. Underlying the dispute as to the application of repealed Minn.Stat. § 500.20, subd. 2, is a dispute regarding the nature of the property rights at issue. The trial court found that the restrictive covenants were reversionary interests and, therefore, a vested estate. A restrictive covenant, however, is a servitude or negative easement. It is not an "estate," which is or may become possessory. *Restatement of Property* § 9 (1936).

The word "estate," * * * means an interest in land which (a) is or may become possessory; and (b) is ownership measured in terms of duration.

Comment:

* * * Such interests as easements, profits, restrictive covenants and agreements affecting the use of land * * * are not possessory interests and not interests which may become possessory.

*Id.*

Further,

(1) A reversionary interest is any future interest left in a transferor or his successor in interest. (2) A reversion is a reversionary interest which is not subject to a condition precedent. (3) A possibility of reverter is any reversionary interest which is subject to a condition precedent.

*Id.* § 154.

■ The issue, then, becomes when the mandate in Minn.Stat. § 500.20 operated to create a right to be free of those covenants.

The general rule in Minnesota is that a right becomes vested when it has "arisen upon a contract, or transaction in the nature of a contract, * * * and liabilities under that right have been so far deter-

---

1. An implication of the trial court decision is that the enactment of Minn.Stat. § 500.20, subd. 2a, in 1988, which was effective August 1, 1988, had no effect on these covenants because, in the court's view, the covenants had expired in 1987. On July 29, 1988, a notice of claim was filed, pursuant to the 1988 act, asserting that the covenants at issue were "not merely nominal but of actual and substantial benefit and should not be disregarded." Under the new act a valid filing to that effect would exclude these covenants from the effect of the new 30-year law.

mined that nothing remains to be done by the party asserting it."

*Ridgewood Dev. Co. v. State,* 294 N.W.2d 288, 294 (Minn.1980) (citation omitted). The trial court used this rationale to declare that when the covenants were formed, "[n]othing was left to be done by the parties, except to wait for the 30 years to expire."

This, however, is not the manner in which the supreme court has applied this statute.[2] In *Ridgewood,* the supreme court said, "It has long been accepted that there are no vested rights in privileges granted by statute." 294 N.W.2d at 294–95. Rather, Minn.Stat. § 500.20, subd. 2, acted as a statute of limitations, cutting off 30–year-old rights. *See Wichelman v. Messner,* 250 Minn. 88, 107, 83 N.W.2d 800, 816 (1957) (regarding Minn.Stat. § 541.023, an act similar to Minn.Stat. § 500.20).[3]

Prior to its repeal in 1982, Minn.Stat. § 500.20, subd. 2 (1980), read as follows:

> All covenants, conditions, or restrictions hereafter created * * * shall cease to be valid and operative 30 years after the date of the deed, or other instrument * * * creating them.

This statutory provision did not become part of the contract creating the covenants. Rather, it imposed a term on the contract, a limited duration. When the legislature repealed the statute, it lifted that imposed term and restored the agreement of the parties. Consistent with this view, the title to chapter 500, Laws of Minnesota for 1982, referring to the repeal of subdivision 2, indicated that the legislature's intent was to "remov[e] a time limitation on the duration of covenants, conditions and restrictions." 1982 Laws of Minnesota ch. 500.

The trial court itself noted some of the factors at work in causing the repeal of Minn.Stat. § 500.20, subd. 2, saying:

> The primary basis for the repeal * * * was the concern expressed by owners of townhouses, condominiums, and areas such as North Oaks that the old statute created a hardship in that it automatically terminated all restrictive covenants in thirty-years without providing a way to extend the covenants.

The trial court even referred to the fact that "[W]ith the repeal of [Minn.Stat. § 500.20, subd. 2], Minn.Stat. § 541.023, the Marketable Title Act became the controlling statute."[4]

---

**2.** In dealing with the repeal of Minn.Stat. § 500.20, subd. 2, the supreme court said that when the restrictive covenant *had actually expired* under the statute before its repeal, there was nothing for the party to do to assert her rights and the repeal did not revive the covenants. *Haugen v. Peterson,* 400 N.W.2d 723, 725 (Minn.1987). *Haugen* is not helpful, despite respondents' assertions, for the case before us is fundamentally different. Here the 30 years had not run before repeal of the statute in 1982.

**3.** The Minnesota Supreme Court explained:

The Marketable Title Act is a comprehensive plan for reform in conveyancing procedures and encompasses within its provisions the collective sanctions of (a) a curative act, (b) a recording act, and (c) a statute of limitations. It is a curative act in that it may operate to correct certain defects which have arisen in the execution of instruments in the chain of title. It is a recording act in that it requires notice to be given to the public of the existence of conditions and restrictions, which may be vested or contingent, growing out of ancient records which fetter the marketability of title. It is as well a statute of limitations in that the filing of a notice is a prerequisite to preserve a right of action to enforce any right,

claim, or interest in real estate founded upon any instrument, event, or transaction which was executed or occurred more than 40 years prior to the commencement of the action, whether such claim or interest is mature or immature and whether it is vested or contingent.

*Wichelman v. Messner,* 250 Minn. 88, 106–07, 83 N.W.2d 800, 816 (1957) (citation omitted).

**4.** Prior to the repeal of Minn.Stat. § 500.20, subd. 2, the Minnesota Supreme Court explained how its provisions and those of the Marketable Title Act worked together to bar claims arising more than 30 years after their creation, under Minn.Stat. § 500.20, and providing for the rerecording, under Minn.Stat. § 541.023, of substantial interests created prior to the enactment of Minn.Stat. § 500.20.

Section 500.20(1) merely applies to conditions that have become nominal. Subdivision 2 limits the duration of conditions "hereafter created" to 30 years. Neither subdivision applies to bar substantial interests which were created long before the enactment of section 500.20(1). * * * The policy of section 541.023 is to require such interests to be recorded again by filing notice. Section 541.023 also assists the operation of section 500.20 by re-

We hold that the trial court erred both in determining the basic nature of the restrictive covenants and in determining that there was a right to be free of the covenants which vested at the time the covenants were entered into. Because it did not vest, any such right was terminated by the repeal of Minn.Stat. § 500.20, subd. 2, in 1982.

2. Appellants also challenge the trial court's alternative rationale for expiration of the covenants, i.e., that respondents had a right to rely on language in their certificates of title to the effect that the covenants would expire on September 20, 1987.

Citing *Horgan v. Sargent*, 182 Minn. 100, 106, 233 N.W. 866, 869 (Minn.1930), the trial court said that:

> [G]ood faith purchasers for value are entitled to rely on the information which is noted on the certificates of title as being accurate without being required to examine the instrument referred to in the memorial.

The issue in *Horgan*, however, was whether the assurance fund for the registrar of titles was required to pay damages for a loss resulting from an inaccurate entry on a title certificate. The plaintiff in *Horgan* had no actual notice, 182 Minn. at 101, 233 N.W. at 867, and the question turned on whether it was negligence for him to have relied on this entry. *Id.* at 106, 233 N.W. at 869. The Minnesota Supreme Court stated that when a registrar "does state material facts in a memorial, the statement should be correct," *Id.* at 107, 233 N.W. at 870, and held that the plaintiff was not negligent in his reliance on the certificate of title. *Id.* at 106, 233 N.W. at 869.

In arriving at that conclusion, however, the court said:

> [The Torrens] act abrogates the doctrine of constructive notice *except as to matters noted on the certificate of title.* We think however that it does not do away with the effect of actual notice.

*Id.* at 105, 233 N.W. at 869 (quoting *In re Juran*, 178 Minn. 55, 60, 226 N.W. 201, 202 (1929)) (emphasis added).

In *Nolan v. Stuebner*, 429 N.W.2d 918, 923 (Minn.App.1988), *pet. for rev. denied* (Minn. Dec. 16, 1988), this court said that:

> Appellants cannot claim that they had no notice of an easement across their land. *Their certificate of title specifically cites two deed documents, one of which created an easement and the other which defined the placement of the easement.* * * * [Appellants] were on notice that such registered documents pertaining to their title existed. *See* Minn.Stat. § 508.48 (1986). Additionally, the [appellants] were on record notice, and actual notice through their attorney's title opinion. * * *
>
> [Appellants] were not bona fide purchasers for value because of the actual and constructive notice of the claimed existence of the easements.

(Emphasis added.) Here the restrictive covenants (written as perpetual) were entered on the certificates of title, along with the somewhat gratuitous notation that the restrictions were to expire on September 20, 1987. We hold that the respondents had constructive notice of the perpetual existence of the covenants, absent the statutory death knell.

Further, we are not dealing with the existence of an easement, as in *Nolan*, or with the amount of a mortgage to be paid, as in *Horgan*. We are dealing with respondents' notice regarding the effect of a statute (whether in effect or repealed) on restrictions on their property. As required by *Horgan*, the memorial stating a material fact was correct when entered. The legislature changed the law.

In addition, Minn.Stat. § 508.02 (1988) provides that:

> Registered land shall be subject to the same burdens and incidents which attach by law to unregistered land. This chapter * * * shall not operate to change or

---

quiring notice filed thereunder to state affirmatively why such conditions have not become nominal. (If nominal, the condition is barred by section 500.20 [subd. 1] even if it is filed under section 541.023.)

*Wichelman,* 250 Minn. at 118, 83 N.W.2d at 823.

affect any other rights, burdens, liabilities, or obligations created by law and applicable to unregistered land except as otherwise expressly provided herein.

Thus, the Torrens certificate does not give the respondent property owners a statutory property interest different from owners of abstract property. Therefore, respondents' knowledge of and reliance upon entries in their certificates of title of a termination date for restrictive covenants, which date was later changed by statute, is not material to a determination of what rights they have under the covenants at issue.

■ 3. The trial court implicitly determined that the enactment of Minn.Stat. § 500.20, subd. 2a, in 1988, had no effect on the restrictive covenants at issue here. *Supra.* Appellants claim, however, that Minn.Stat. § 500.20, subd. 2a (1988), explicitly refers to its impact on covenants adopted prior to August 1, 1959. For covenants, such as those at issue here, which under a continuously running statute would have expired during the period between the 1982 repeal of Minn.Stat. § 500.-20, subd. 2, and the 1988 enactment of Minn.Stat. § 500.20, subd. 2a, the new statute provides for a bar to expiration if proper notice is filed "on or before March 30, 1989." Minn.Stat. § 500.20, subd. 2a(2).[5] In this case, a proponent of the continuation of the restrictive covenants in fact filed a notice pursuant to its provisions in July 1988.

We hold that the trial court erred in leaving undetermined the effect that Minn. Stat. § 500.20, subd. 2a, had on the restrictive covenants at issue here. We must remand for trial on the effect of the July 1988 filing, on whether the covenants were of actual and substantial benefit, and thus, on the appropriateness of giving the covenants continued effect.

## DECISION

We hold that Minn.Stat. § 500.20, subd. 2 (1956), did not terminate the covenants at issue in this case because those covenants were not terminated under that statute prior to its repeal in 1982. We also hold that the respondents had constructive notice of the content of the protective covenants because the covenants were noted on the certificates of title and the Torrens act does not abrogate the doctrine of constructive notice as to matters noted on the certificate of title, nor does it do away with actual notice.

Further, Minn.Stat. § 500.20, subd. 2a (1988), explicitly refers to covenants adopted prior to 1959 and the trial court erred in not determining the effect of that statute on the covenants at issue here.

Reversed and remanded.

5. Some overlap is provided. Holders of interests which would have expired (given a continuously running statute) during the first year of the operation of the new statute, i.e., between August 1, 1988, and August 1, 1989, are also given this option.