MINNICH ET AL., APPELLEES, *v.*
GUERNSEY SAVINGS AND LOAN
COMPANY; MID-OHIO COAL COMPANY,
APPELLANT.

(Nos. CA-811 and -827—Decided
February 24, 1987.)

*Ronald G. LaAsmar,* for appellees.
*Squire, Sanders & Dempsey* and
*John C. Parks,* for appellant.

WISE, J. Defendant-appellant appeals from the judgments of the Court of Common Pleas of Guernsey County (1) granting plaintiffs-appellees' motion for summary judgment; (2) overruling appellant's motion for summary judgment; and (3) overruling appellant's Civ. R. 60(B) motion. Defendant-appellant, Mid-Ohio Coal Company ("Mid-Ohio"), raises the following two assignments of error in case No. CA-811:

Assignment of Error No. I

"The trial court erred to the prejudice of appellant Mid-Ohio Coal Company ("Mid-Ohio"), in denying its motion for summary judgment."

Assignment of Error No. II

"The trial court erred to the prejudice of Mid-Ohio in granting the motion for summary judgment of appellees, Peter and Irene Minnich ('the Minniches')."

Mid-Ohio raises the following assignment of error in case No. CA-827:

Assignment of Error No. I

"The trial court erred to the prejudice of Mid-Ohio in denying its motion for relief from judgment."

Plaintiffs-appellees, Peter and Irene Minnich ("the Minniches"), originally filed suit in October 1981 against Alex and Nancy Kocsis ("the Kocsises"), the Guernsey Savings and Loan Company and David B. McQueen, individually and as vice-president of the savings and loan. The Minniches had essentially claimed that the sellers, from whom they purchased certain real estate, breached warranties of title. This claim arose after the Minniches had purchased approximately ninety-seven acres of land in Valley Township, Guernsey County. In their first complaint, the Minniches alleged that the real estate conveyed to them was lacking in *all* sub-surface rights, whereas they contracted for marketable title to the ninety-seven acres excepting only the coal underlying the property. On July 9, 1982, Mid-Ohio was joined as a party-defendant in a second amended complaint which requested declaratory judgment regarding Mid-Ohio's rights to the ninety-seven acres.

Mid-Ohio filed a motion for summary judgment on the issue of whether it was the owner of *all* the sub-surface rights to the ninety-seven acres. The Minniches filed a brief in opposition and their own motion for summary judgment in response, claiming they were the owners of the ninety-seven acres, including the non-coal sub-surface rights, as a result of the Marketable Title Act. The trial court, on

March 20, 1986, granted the Minniches' motion for summary judgment and denied Mid-Ohio's motion for summary judgment, finding that the Minniches had title to the ninety-seven acres, including the sub-surface rights, excepting the coal.

Mid-Ohio filed a notice of appeal from that decision, which became Guernsey County Court of Appeals case No. CA-811. Shortly thereafter, Mid-Ohio filed a motion for relief from judgment pursuant to Civ. R. 60(B), and this court subsequently granted Mid-Ohio's motion requesting a limited remand for the purpose of allowing the trial court to determine the Civ. R. 60(B) motion. On August 1, 1986, the trial court denied Mid-Ohio's motion for relief from judgment. Mid-Ohio thereafter appealed from this decision, which became Guernsey County Court of Appeals case No. CA-827.

In the interest of judicial economy, we will determine both appellate cases in this opinion, as they both involve essentially the same facts and lend themselves to a single determination.

## Case No. CA-811
### A. Marketable Title

The trial court determined that both parties have satisfied the elements of the Marketable Title Act as enacted in Ohio. See R.C. 5301.47 to 5301.56. We agree.

The purpose of the Ohio Marketable Title Act is to improve the marketability of title by expunging certain outstanding claims due to a lapse of time. Hausser & Van Aken, Ohio Real Estate Law and Practice (1985), T 7.02. This is accomplished primarily through the establishment of "marketable record title." R.C. 5301.48 provides that:

"Any person having the legal capacity to own land in this state, who has an unbroken chain of title of record to any interest in land for forty years

or more, has a marketable record title to such interest * * *."

Marketable record title depends upon an unbroken chain of recorded title transactions from the present claimant back to the title transaction "which (1) has been of record for more than forty years and (2) adequately embodies the real property interest." Hausser & Van Aken, *supra,* T 7.03(C), at 152; and see R.C. 5301.47. This title transaction is called the "root of title." It is the title transaction that must be relied upon as a basis for marketability.

The Minniches' root of title is the 1942 deed from the heirs of Amos McIlwee to John and Ruth McCall. (Deed Book Vol. 183, p. 582.) The deed contained a grant of ninety-seven acres, excepting "all the coal in and underlying the said premises heretofore sold and conveyed." The ninety-seven acres conveyed were later transferred solely to Ruth McCall in 1971 and she subsequently deeded it to the Ratliffs (Deed Book Vol. 300, p. 982). In 1976 the Ratliffs deeded the ninety-seven acres to defendants Alex and Nancy Kocsis (Deed Book Vol. 320, p. 212) who subsequently deeded the property to the Minniches in 1977 (Deed Book Vol. 326, p. 44).

Mid-Ohio's root of title, recorded two years prior to the Minniches' root of title, is the 1940 special master's deed (Deed Book Vol. 188, p. 194) which resulted from the foreclosure of a mortgage on certain property owned by Cambridge Collieries Company.

The Minniches hold marketable record title to the ninety-seven acres, excepting the coal rights, by virtue of having an unbroken chain of record title for over forty years which extinguishes prior claims and interests, including that of Mid-Ohio's prior root of title, unless Mid-Ohio's interest is continued by one of the methods provided for in the Marketable Title Act. Hausser & Van Aken, *supra.*

A marketable record title is subject to an interest arising out of a "title transaction" under R.C. 5301.49(D) or the filing of a preservation notice under R.C. 5301.51, which may be part of an independent chain of title. *Heifner* v. *Bradford* (1983), 4 Ohio St. 3d 49, 4 OBR 140, 446 N.E. 2d 440. Mid-Ohio, in 1976, filed an affidavit for notice of preservation of interest in land (Deed Book Vol. 321, p. 797). This affidavit, filed pursuant to R.C. 5301.51, stated that Mid-Ohio was the owner of certain land and mineral interests as set forth in the 1940 special master's deed which was attached. This affidavit was also noted on the appropriate notice index. The affidavit effectively preserved Mid-Ohio's claim to the sub-surface rights of the ninety-seven acres in question.

The trial court correctly concluded that neither the interest of the Minniches nor the interest of Mid-Ohio was extinguished by the operation of the Marketable Title Act. This being the case, we must examine the two independent chains of title in order to determine the claims of the parties. We append a diagram illustrating the pertinent title transactions.

### B.   Chain of Title

When we trace the Minniches' chain of title back from their root of title, we find that Amos McIlwee's heirs received one hundred acres in a 1929 testate transfer (Deed Book Vol. 177, p. 99). The affidavit of transfer of inherited real estate contained a recital of a one-hundred-acre grant in fee simple which included the ninety-seven acres in question. However, the record reveals that in 1910, Amos McIlwee and his wife granted approximately 3.82 acres of that one hundred acres to Cambridge Collieries Co. (Deed Book Vol. 103, p. 336). This grant contained the language, "[e]xcept the coal and mining privileges heretofore sold and conveyed."

Amos McIlwee received the one hundred acres in an 1890 deed from Isaac McIlwee and his wife (Deed Book Vol. 40, p. 217). That deed granted Amos one hundred acres in fee simple "free and clear from all incumbrances whatsoever."

However, prior to that grant, in 1883, Isaac McIlwee granted unto the Akron & Cambridge Coal Co. and its successors and assigns the same one hundred acres, "reserving to said Isaac McIlwee and his heirs and assigns the surface of all said lands except the right of airing and drainage hereby granted to said grantee its successors and assigns." (Deed Book Vol. 30, p. 136).

It is from the 1883 deed that Mid-Ohio contends it has title to the sub-surface rights to the ninety-seven acres. Mid-Ohio has marketable title to the surface of three or so acres of the one hundred acres originally granted by Isaac McIlwee, by virtue of Amos McIlwee's 1910 deed to the Cambridge Collieries Co.

The trial court found that Mid-Ohio did not establish a chain of title back to the 1883 deed. But Mid-Ohio can clearly establish a chain of title back to the Cambridge & Elyria Coal Co. which deeded the sub-surface rights to the one hundred acres to the Consolidated Cambridge Coal Co. in 1892 (Deed Book Vol. 44, p. 152).

Mid-Ohio contends that the Cambridge & Elyria Coal Co. was the successor of the Wheeling & Lake Erie Coal Co., which in turn was the successor of the Akron & Cambridge Coal Co., which originally received the grant from Isaac McIlwee. Should that be the case, Mid-Ohio has title to the interests granted to the Akron & Cambridge Coal Co. by Isaac McIlwee in

1883. Mid-Ohio points out that the 1892 deed contains a recital to the effect that "the Wheeling & Lake Erie Coal Co. is the successor of the Akron & Cambridge Coal Co. and the [Cambridge & Elyria Coal Co.] is the successor of the Wheeling & Lake Erie Coal Co."

The trial court found that this recital was not sufficient as a matter of law to establish a claim of title back to the 1883 deed. Thus, the trial court found that the 1976 affidavit of preservation of interest could not preserve any interest in the land because Mid-Ohio had no interest to preserve.

This analysis is not persuasive. Under the Marketable Title Act, even a stray or "wild" recorded deed can be the basis for marketable record title. Hausser & Van Aken, *supra*, at T 7.19. And furthermore, having determined that the Marketable Title Act does not extinguish either party's claim to the property, the Marketable Title Act is no longer applicable to determine title to the property. Thus, the parties' interests must be determined as though the Act were not in effect.

As noted above, if we trace the claim of title of both parties, we wind up with a common grantor, Isaac McIlwee. Anyone searching the Minniches' title back to Isaac McIlwee would be put on notice that the sub-surface rights to the ninety-seven acres were granted to the Akron & Cambridge Coal Co. in 1883. An abstractor may not, without a close inspection of the 1892 deed, be able to trace every link in the chain of the title down to Mid-Ohio, but it is clear that the Minniches do not have title to the sub-surface rights.

The Minniches also contend that the language of the 1883 deed did not grant anything more than coal rights. We disagree. This is not a case where the deed contained a non-specific mineral reservation. See *Detlor* v. *Holland* (1898), 57 Ohio St. 492, 49 N.E. 690, and *Belden* v. *Thomas* (Aug. 5, 1975), Tuscarawas App. No. 1148, unreported. The language of the 1883 deed specifically gave the whole fee unto the Akron & Cambridge Coal Co., but reserved the surface for Isaac McIlwee and his heirs. This reservation was limited by an exception for "airing and drainage," which indicated that the parties contemplated mining the land. However, this exception to the reservation in no way lessens the grant of all the sub-surface rights; rather, it limits the retained "surface of all said lands."

## C. Summary Judgment

It is important to keep in mind that this matter was resolved on summary judgment. Before summary judgment may be granted, the trial court must determine that:

"* * * (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E. 2d 267, 274.

Since the Marketable Title Act did not extinguish Mid-Ohio's claim, the Minniches cannot claim title to the sub-surface rights to the ninety-seven acres. Therefore, as to the Minniches' summary judgment motion, viewing the record in the light most favorable to Mid-Ohio, per Civ. R. 56(C), we find that while there is no genuine issue of material fact, nevertheless, the Min-

niches are not entitled to judgment as a matter of law.

On the other hand, regarding Mid-Ohio's summary judgment motion, we find that Mid-Ohio is entitled to judgment in its favor. Viewing the evidence most strongly in favor of the Minniches, we still cannot find any evidence suggesting that Mid-Ohio does not have good title. There may be a cloud upon it as a result of the corporate "successions," but no evidence has refuted these name changes. The recitals in the 1892 deed have not been contested factually. Due to the great age of the deeds in question, equitably, some presumption must arise as to the legitimacy of the corporate "successions." We note that the Ohio State Bar Association's Standards of Title Examination state that where an instrument of a private corporation appears in a title search, and it has been of record for a period of at least seven years, "the examiner may assume that the corporation was legally in existence at the time the instrument took effect." Hausser & Van Aken, *supra,* T 3.01, at 93. Although this standard is in no way controlling, it evidences the need for presumptions in this area. Accordingly, since the Minniches have not rebutted Mid-Ohio's evidence supporting the corporate "successions," Mid-Ohio is entitled to summary judgment.

Therefore, we sustain Mid-Ohio's first and second assignments of error, and reverse the judgment of the Court of Common Pleas of Guernsey County.

### Case No. CA-827

In support of its motion for relief from judgment pursuant to Civ. R. 60(B), Mid-Ohio sought to establish the succession of the above-mentioned companies in order to complete its chain of title back to the 1883 deed. To this end, Mid-Ohio presented an order of the Guernsey County Court of Common Pleas acknowledging a change of name by the Akron & Cambridge Coal Co. to the Wheeling & Lake Erie Coal Co. Having already found that Mid-Ohio has good title to the sub-surface rights to the ninety-seven acres in question, we must sustain appellant's assignment of error.

Accordingly, the judgments tendered by the Court of Common Pleas of Guernsey County in both cases are reversed.

*Judgments reversed.*

MILLIGAN and HOFFMAN, JJ., concur.

APPENDIX

ISAAC McILWEE
1883 deed (30-136)

AKRON & CAMBRIDGE
COAL CO. - 100 acres
in Fee Simple (FS)

But:
reserving in FS "the
surface of all said
lands"

1884 change
of name

1890 deed
(40-217)

WHEELING & LAKE ERIE COAL CO.
?

AMOS McILWEE
-80 & 20 acres in FS with
no incumbrances

1910 deed
(103-336)

1929 transfer
(177-99)

CAMBRIDGE & ELYRIA COAL CO.
1892 deed
(44-152)

McELWEES & SMALLWOOD
transfer to heirs

1942 deed
(183-582)

CONSOLIDATED CAMBRIDGE COAL CO.
1895 name change
(50-377)

McCALLS
-80 & 20 acres,
less 3 acres & coal
"heretofore conveyed"

1971 transfer
(289-687)

CAMBRIDGE CONSOLIDATED COAL
1906 deed
(89-62)

CAMBRIDGE & MUSK. VALLEY COAL
1907 name change
(1-313)

RUTH McCALL
1973 deed
(300-982)

CAMBRIDGE COLLIERIES CO.

CAMBRIDGE
COLLIERIES·CO.
3.82 acres FS
1940 Special Master's
deed (foreclosure)
(180-194)

RATLIFFS
1976 deed
(320-212)

KOCSIS, ALEX & NANCY
1977 deed
(326-44)

MID-OHIO COAL COMPANY
1976 Aff. of Interest
in land (Exh. T)
(321-797)

MINNICH, PETER & IRENE

Aff. States:
Mid-Ohio is owner of land &
mineral interests as set forth
in the special master's deed.