**Grace E. WEBER, f/k/a Grace Eva Diggins; et al., Appellants,**

v.

**Roy EISENTRAGER, Respondent.**

**No. C7-92-373.**

Court of Appeals of Minnesota.

Aug. 25, 1992.

Review Granted Oct. 20, 1992.

Bryan J. Baudler, Terence L. Meany, Austin, for appellants.

David V. Hoversten, Austin, for respondent.

Considered and decided by FORSBERG, P.J., and HARTEN and FOLEY,* JJ.

* Retired judge of the Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI,

## OPINION

HARTEN, Judge.

Appellants Grace E. Weber and Mary E. Peters challenge a trial court's award of title to real estate to respondent Roy Eisentrager. The trial court ruled that the Marketable Title Act extinguished appellants' claim to the property. We affirm.

## FACTS

In 1933, appellants' father, sole owner of the realty at issue, died intestate. The probate court awarded appellants' mother a life estate in the property and appellants the remainder. Appellants were unaware of their interest in the property. The record does not reveal the reason for appellants' lack of knowledge; while bad faith was argued to the trial court, it is not argued on appeal.

Appellants' mother married respondent and the couple lived on the property. In 1949, appellants' mother and respondent executed a warranty deed conveying the property to a strawman who immediately quitclaimed the property back to appellants' mother and respondent as joint tenants. A year later, the deeds were recorded.

In 1980, while placing their mother in a nursing home, appellants learned that they had a remainder interest in the property. Appellants consulted with "several attorneys" about their interest and at one time attempted to insure the property separately from respondent. Appellants did not, however, record any document regarding their claim to the property and respondent continued to live on the property after appellants' mother entered a nursing home.

In June 1991, appellants' mother died. Appellants wanted to sell the property. They served respondent with a notice to vacate. When respondent failed to vacate, appellants sued, alleging that based upon their remainder interests, they were entitled to the property. Respondent counter-

§ 2.

claimed alleging entitlement to the property as the surviving joint tenant. Upon agreed facts, both parties moved for summary judgment. After a hearing, the trial court ruled that because appellants did not file a notice of their claim within 40 years of the straw transaction, and because appellants were not in possession of the property, they were conclusively presumed to have abandoned their claim to the property under the Marketable Title Act.

## ISSUE

Did the trial court err in granting respondent summary judgment on the ground appellants' claim was barred by the Marketable Title Act?

## ANALYSIS

 On appeal from summary judgment, this court asks "whether there are any genuine issues of material fact" and "whether the trial court erred in its application of the law." *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). We look at the evidence in a light most favorable to the party against whom summary judgment was entered. *Id.* Because the facts in this case are not disputed, the questions appealed are legal and we are not bound by the trial court's legal conclusions. *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs.,* 260 N.W.2d 579, 582 (Minn.1977).

The Marketable Title Act (MTA) states: As against a claim of title based upon a source of title, which source has then been of record at least 40 years, no action affecting the possession or title of any real estate shall be commenced * * * to enforce any [claim] founded upon any [event] which [occurred] more than 40 years prior to the commencement of such action, unless within 40 years after such [event] there has been recorded * * * a notice sworn to by the claimant or the claimant's agent or attorney setting forth the name of the claimant, a description of the real estate affected and of the [event] on which such claim is founded, and stating whether the [claim] is mature or immature.

Minn.Stat. § 541.023, subd. 1 (1990). Here, appellants knew of their interest in the property at least 10 years before expiration of the statutory 40 year period, and consulted counsel about it, but did not record notice of their claim.

There are two basic requirements necessary to extinguish an interest in land under the MTA:

> "First, the party desiring to invoke the statute for his own benefit must have a requisite 'claim of title based upon a source of title, which source has then been of record at least 40 years,' (i.e. a recorded fee simple title). Secondly, the person against whom the act is invoked must be one who is 'conclusively presumed to have abandoned all right, claim, [and] interest * * * in the property [under Minn.Stat. § 541.023, subd. 5].' "

*Padrnos v. City of Nisswa,* 409 N.W.2d 36, 38 (Minn.App.1987), *pet. for rev. denied* (Minn. Sept. 23, 1987) (quoting *Wichelman v. Messner,* 250 Minn. 88, 112, 83 N.W.2d 800, 819 (1957)). Appellants allege there is no "source of title" in this case because the warranty deed was executed by a life tenant. Appellants also argue that they did not abandon their claim to the property.

 1. *Source of Title.* The trial court stated, "[Respondent] has had a source of title in the property for forty years through the quitclaim deed from the straw person." The trial court noted that respondent argued that the strawman conveyances should have put appellants on notice of his claim. The trial court continued:

> This concept, seemingly violative of black letter law, vests fee simple title with [respondent] under the MTA. * * * The title from the straw person is the new source of title. Forty years passed since the deed was recorded and no notice was filed, even though [appellants] had contacted attorneys about their property interest.

Critical to the trial court's ruling is the assumption that the quitclaim deed can function as the "source of title" required by the MTA.

Appellants cite Minn.Stat. § 507.19 (1945). It provides that a life tenant cannot transfer an interest in property greater than that possessed by the life tenant. *Id.* Appellants argue that "respondent's title is no better than if acquired by a stray deed." To support this argument, appellants refer to *Wichelman*, which states that the MTA "does not operate to provide a foundation for a new title." 250 Minn. at 112, 83 N.W.2d at 819. Although inviting, upon analysis of statutory and case law, we conclude that appellants' argument cannot prevail.

Noting that life estate holders lack the "estate of inheritance which would permit [them] to invoke the protection of the act," *Wichelman* specifically indicates that holders of remainder interests need not file statutory notice to retain their interests. 250 Minn. at 105–06, 83 N.W.2d at 815–16. As one commentator observes, however:

> The question [of] whether [remainder interests] might be lost by conveyance in fee by the life tenant * * * and passage of more than 40 years was not discussed [in *Wichelman*].

Lewis M. Simes and Clarence B. Taylor, *Improvement of Conveyancing by Legislation* 339 (1960).

Also, after *Wichelman*, the MTA was amended to define "source of title" as "any instrument"

> which transfers * * * or purports to transfer * * * a fee simple title to real estate, *including any such instrument which purports to transfer * * * a fee simple title from a person who was not the record owner of the real estate.* However, any such instrument which purports to transfer * * * a fee simple title from a person who was not the record owner of real estate to the grantee or transferee named in such instrument shall be deemed a source of title "of record at least 40 years" within the meaning of subdivision 1 only if, during the period of 40 years after it was recorded, the following two conditions are fulfilled: (1) another instrument was recorded which purports to transfer a fee simple title from said grantee or trans-

feree to another person and (2) no instrument was recorded which purports to be * * * a transfer of any interest in the real estate by or from whoever was the record owner in fee simple immediately before the commencement of said period of 40 years. The purpose of the next preceding sentence is to limit the effect of erroneous descriptions or accidental conveyances.

1959 Minn.Laws ch. 492, § 1, *codified at* Minn.Stat. § 541.023, subd. 7 (emphasis added). This definition allows an instrument conveyed by a person not the record owner of property to be a "source of title." *See* Simes and Taylor at 340 (The amendment's effect is that *any* recording of a "'fee simple transaction' will serve as a point of beginning for the chain of title contemplated by the act.")

In applying the "source of title" definition to this case, it is undisputed that appellants' mother and respondent did not have fee title when they executed their warranty deed to the strawman. It is also undisputed that appellants did not transfer any interest in the real estate within 40 years of the transfer to the strawman. Therefore, whether respondent has a "source of title," depends upon whether the strawman's quitclaim deed purports to transfer a fee simple title.

Quitclaim deeds

> purport to transfer only such interest as the grantor may have and usually exclude any implication that he has a good title * * * but they are just as effective as a warranty deed in conveying any interest which the grantor *presently* has.

John E. Cribbet & Corwin W. Johnson, *Property* 1300 (5th ed. 1984) (emphasis in original; footnote omitted). Under some foreign authority a quitclaim deed can serve as a "root of title."

In *Travick v. Parker*, 436 So.2d 957, 958 (Fla.Dist.Ct.App.1983), M, who owned real property, died intestate. A stranger subsequently acquired a tax deed to the property and later quitclaimed it to M's daughter who "deeded" the property to her daughter and son-in-law. After M's daughter died,

M's other children sued for an interest in the property.

In *Travick*, the court noted that under the MTA, a tax deed acquired by a first cotenant could extinguish a second cotenant's interest if the second cotenant did not file timely notice of an interest in the property. The court then stated that "[the child's] quitclaim deed properly serves as the root of title." It should be noted, however, that the Florida MTA does not require the "root of title" to convey fee simple title. Fla.Stat. § 712.01(2) (1981). It does, however, require the "root of title" to convey the "estate claimed." *Id.*

Here, the Minnesota MTA requires the "source of title" to purport to convey fee title, and that is the estate claimed by the parties. Here, the records of land transactions would show the strawman was quitclaiming his interest after having received a warranty deed. Thus, per the records, the quitclaim deed *purported* to convey fee title.[1]

"[An otherwise valid] chain of title arising out of a forged or wild deed [is valid], so long as strict requirements of the [MTA] are met." *Marshall v. Hollywood, Inc.*, 236 So.2d 114, 120 (Fla.1970), *cert. denied*, 400 U.S. 964, 91 S.Ct. 366, 27 L.Ed.2d 384 (1970). *See also Minnich v. Guernsey Sav. & Loan Co.*, 36 Ohio App.3d 54, 521 N.E.2d 489, 493 (1987) ("Under [the MTA], even a stray or 'wild' recorded deed can be the basis for marketable record title.") Although latently defective, the warranty deed here, which was not challenged within the statutory period, is analogous to a "pre-root" stray, wild or forged deed. For this reason, the quitclaim deed the trial court found to be respondent's "source of title" is analogous to the subsequent titles deemed marketable in the cited cases.[2]

2. *Possession.* Because respondent has a "source of title," the MTA is applicable. It states:

> Any claimant under any [event] barred by the provisions of this section shall be conclusively presumed to have abandoned all [claims] based upon such [event]; and the title in the name of any adverse claimant to the real estate which would otherwise be affected thereby shall not be deemed unmarketable by reason of the existence of [the event]; it being hereby declared as the policy of the state of Minnesota that, except as herein provided, ancient records shall not fetter the marketability of real estate.

Minn.Stat. § 541.023, subd. 5 (1990). Under Minn.Stat. § 541.023, subd. 6 (1990), however, the MTA does not affect the rights of any person "in possession of real estate." Therefore, appellants' possession of the property would allow them to escape the presumption of abandonment under subdivision 5 generated by their failure to record their interest. *Caroga Realty Co. v. Tapper*, 274 Minn. 164, 177, 143 N.W.2d 215, 224–25 (1966). Under *Caroga* possession

> must be present, actual, open, and exclusive and must be inconsistent with the title of the person who is protected by

---

1. Giving dispositive effect to the record in applying the MTA is consistent with the commentators. *See* 6A Richard R. Powell and Patrick J. Rohan, *Powell on Real Property* § 907[1][c] (1987) (One objective of a marketable title act "is to render it possible for the person who is checking a title to determine, to the greatest extent possible, the marketability of the title *from the record alone.* * * * the goal *is to make the record the sole determinant of the facts* and the goal if the requirements for cutting off a prior interest are met on the record then the act operates to accomplish its purpose." (Emphasis added.)); Paul E. Bayse, *Clearing Land Titles*, § 173 at 375 (2d ed. 1970) ("One must trace the title back for [the prescribed] period and also for additional time until he encounters a conveyance or other title transaction of record purporting to vest the interest under investigation in the person then claiming it. Marketability will then be determined by the net effect of *all recorded instruments* subsequent to that one." (Emphasis added; citation omitted.)).

2. This analysis addresses appellants' argument that because of Minn.Stat. § 507.19 (1990), a life tenant cannot convey an interest in property greater than that which the tenant holds and therefore the most respondent could receive was a life estate. Because respondent has a "source of title," the fact that a life tenant cannot convey a fee interest becomes irrelevant. It is the MTA and appellants' failure to preserve their claims thereunder, rather than the erroneous conveyance itself, which results in the transfer of interests exceeding the life estate.

[the MTA]. It cannot be equivocal or ambiguous but must be of a character which would put a prudent person on inquiry.

274 Minn. at 179, 143 N.W.2d at 225 (quoting *B.W. & Leo Harris Co. v. City of Hastings*, 240 Minn. 44, 49, 59 N.W.2d 813, 816 (1953)). According to the trial court, "[appellants'] claim of possession is not present, actual, open and exclusive, though it is inconsistent with [respondent's] title."

■ Appellants challenge this determination, alleging a lack of evidence suggesting that they abandoned their interest. The MTA conclusively presumes abandonment if a party fails to file notice of claim unless the party is in possession of the property. Appellants did not file notice of their claim. Therefore, the question becomes whether they possessed the property, not whether they affirmatively abandoned their interest.

Appellants also allege that their inaction cannot be deemed an abandonment. Under Minn.Stat. § 500.15, subd. 1 (1990), a life tenant cannot convey or cause to be destroyed the interest of a remainderman. Accordingly, appellants argue that they enjoyed a statutory presumption against abandoning their interests. Under the instant circumstances, a conflict is produced by simultaneous application of the MTA and Minn.Stat. § 500.15, subd. 1.

Under Minn.Stat. § 645.26, subd. 1 (1990):

If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision.

Minn.Stat. § 500.15 applies to all conveyances by life tenants; however, the MTA here applies to those conveyances by life tenants which occurred more than 40 years previously. *See* Minn.Stat. § 541.023, subd. 4 (MTA applies to claims based on events 40 or more years old). Thus, the MTA is the more specific provision; it prevails under Minn.Stat. § 645.26, subd. 1.

This conclusion is consistent with the following three points. (1) The state policy is that "ancient records shall not fetter the marketability of title." Minn.Stat. § 541.-023, subd. 5. (2) Future interests are not included in the list of titles unaffected by the MTA. *See* Minn.Stat. § 541.023, subd. 6; *see also* Bayse, § 180 at 411–12 (Although Minnesota MTA does not list kinds of affected real estate interests, "it was intended and will be construed to include future interests.") (3) The later-enacted of two irreconcilable laws prevails. *See* Minn. Stat. § 645.26, subd. 4 (1990).[3]

Appellants misplace reliance on *Ashbaugh v. Wright*, 152 Minn. 57, 62, 188 N.W. 157, 159 (1922) in connection with the argument that possession by a life tenant's grantee is not adverse to a remainderman until expiration of the life estate. First, it presumes that respondent was a life tenant's grantee. Any interest respondent acquired in the property came by the quitclaim deed from the strawman. Second, *Ashbaugh* predates the MTA by more than 20 years. Therefore, we cannot regard it as dispositive in a case involving the impact of the MTA on a remainderman's interest. Appellants' final argument is that they should be deemed to be in constructive possession of the property as respondent's landlord. They cite *Township of Sterling v. Griffin*, 309 Minn. 230, 244 N.W.2d 129 (1976) for the proposition that the MTA must be construed in light of the public interest in greater security of *individuals'* claims to ownership of land. *Id.* at 235, 244 N.W.2d at 133.

*Griffin* concerned the MTA's applicability to a township and whether the township abandoned a road. *Griffin* states:

[MTAs] must be construed in the light of the public good in terms of more secure land transactions which outweighs the burden and risk imposed upon others of old outstanding rights to record their interests.

The fact that the owner of an old, outstanding interest is a public body is not a

3. The MTA was enacted in its present form in 1947. *See* 1947 Minn.Laws ch. 118, § 1. The provision protecting remainder interests, how-

ever, has not been amended since its inception. *Compare* Minn.Stat. § 500.15, subd. 1 (1990) *with* Gen.Stat. ch. 31, § 32 (1849–58).

sufficient public interest to defeat the larger interest of the public in greater security in real estate transactions.

*Id.* (emphasis omitted; quoting *Wichelman*, 250 Minn. at 121, 83 N.W.2d at 825; other citation omitted.) *Griffin* demonstrates that the benefit derived from requiring interest holders, even public bodies, to file notice of their interests is greater than the costs imposed by the requirement.

The remainder of appellants' constructive possession argument is rejected by the definition of the possession required to avoid presumed abandonment. *Caroga* and *Harris* require "actual, open and exclusive" possession. Constructive possession through an opposing party is neither "actual" nor "exclusive." Finally, appellants' attempt to insure the property obviously fails to satisfy the requirement of putting a prudent person on notice of appellants' claims. It would allow persons who have neither filed notice of their claims nor are in actual possession of the property to circumvent the MTA and "ambush" subsequent purchasers with unrecorded interests.

The destruction of appellants' remainder interest in family property is unfortunate. Nonetheless, by enactment of the MTA, the legislature has established a hierarchy of policy values, to-wit, the interest in marketability of real estate unfettered by ancient records transcends occasional inequities which result from disqualified individual interests. Minn.Stat. § 541.023, subd. 5.

## DECISION

A quitclaim deed may serve as a "source of title" under the Marketable Title Act and is not necessarily invalidated because the prior deed was a "stray deed." Therefore, because appellants neither filed notice of their claim to the property nor possessed it, the Marketable Title Act extinguished their interests.

Affirmed.

FOLEY, Acting Judge, concurring specially.

The result in this case troubles me. My colleagues on the panel have persuaded me to conclude that the deed to respondent is a "source of title" under current statute. But I am still in doubt.

What respondent received from the "strawman" was a quit claim deed.

In *Wichelman v. Messner*, 250 Minn. 88, 106, 83 N.W.2d 800, 815–16 (1957), the Minnesota Supreme Court concluded that the title to be protected was *fee simple title:*

It seems clear to us that it would be unreasonable and inconsistent with the statute's purpose to include within the meaning of the word "title" the term for years and the life estate and thus compel the reversioner or remainderman to file the statutory notice or be barred. It cannot be seriously argued that the holder of the life estate or his tenant would have an estate of inheritance which would permit him to invoke the protection of the act. "Only those who possess a title which complies with the conditions of the statute are qualified to invoke its aid." *Lytle v. Guilliams*, 241 Iowa 523, 529, 41 N.W.2d 668, 672, 16 A.L.R.2d 1377. The legislature does not intend a result that is unreasonable; and it does not intend to violate the Minnesota or United States Constitutions. § 645.17(1, 3).

The court went on to state:

We do not think the statute lends itself to an interpretation to the effect that title may be founded on a stray, accidental, or interloping conveyance. Its object is to provide, for the recorded fee simple ownership, an *exemption* from the burdens of old conditions and restrictions which at each transfer of the property interfere with its marketability. The statute does not operate to provide a foundation for a new title.

*Id.* 250 Minn. at 112, 83 N.W.2d at 819.

Here, the remaindermen, the children, could not interfere with their mother's life estate, given in 1933, the decree recorded, and the life estate not ended until her death in 1991. Notwithstanding the deeds recorded by the mother and stepfather in 1950, I do not see how the remaindermen have abandoned their interest because they

learned of the deed to respondent in 1980. Could they not have had constructive possession through all the years since 1933 through their mother occupying the premises as a life tenant?

It is my request to the supreme court that they revisit *Wichelman* in light of the statutory changes in the Marketable Title Act since it was written, and clarify its application and viability today, as it applies or not to life tenants and remaindermen. In addition, the court should clarify the meaning of "source of title" where quit claim deeds are involved.