**Grace E. WEBER, f/k/a Grace Eva Diggins, et al., Petitioners, Appellants,**

v.

**Roy EISENTRAGER, Respondent.**

No. C7–92–373.

Supreme Court of Minnesota.

April 16, 1993.

Terence L. Meany, Leighton, Meany, Cotter & Enger, Ltd., Austin, for Mary E. Peters.

Bryan J. Baudler, Baudler, Baudler, Maus & Blahnik, Austin, for Grace E. Weber.

David V. Hoversten, Hoversten, Strom, Johnson & Rysavy, Austin, for respondent.

John R. Carroll, Best & Flanagan, Minneapolis, Larry M. Wertheim, Holmes & Graven, Minneapolis, Franklin Michaels, Michaels, Seeger, Rosenblad & Arnold, Rochester, Charles H. Andresen, Crassweller, Magie, Andresen, Haag & Paciotti, P.A., Duluth, Richard Edblom, Hennepin County Examiner of Titles, Minneapolis, Charles L. Horn, Minneapolis, James A. Dueholm, Faegre & Benson, Minneapolis, amicus.

GARDEBRING, Justice.

This case involves competing claims for ownership of property located in Mower

County. The issue in this case is whether the application of the Marketable Title Act can bar the claim of those holding vested remainder interests when the party in possession has a source of title more than 40 years old that came from a strawperson who in turn received his interest from the holder of a life estate.

The facts are simple and undisputed. On April 11, 1927, John Diggins received a deed for the real property at issue in this case. He died intestate on May 5, 1933, and was survived by his wife, Lena and two daughters, Grace and Mary. On August 7, 1933, a final decree of distribution directed that Grace and Mary Diggins receive the property in fee, subject to a life estate in their mother Lena Diggins.

On February 19, 1948, Lena Diggins married Roy Eisentrager, respondent. A little over a year later, on June 30, 1949, Lena and Roy executed a warranty deed conveying her interest in the land to a strawperson by a warranty deed. The strawperson, by quitclaim deed, immediately deeded the land back to Roy and Lena as joint tenants.[1] Lena and Roy continued to live together on the property until 1980 when Lena entered a nursing home. It was at this time that appellants learned of their remainder interest in the property. Appellants did not file notice of their interest, but did insure the property. Lena died on June 17, 1991, and was survived by Roy. After their mother's death, appellants ordered Roy to vacate the property, but he refused and this action ensued. The trial court held for Roy on a motion for summary judgment and the court of appeals affirmed.

The purpose of Minn.Stat. § 541.023 (1992), the Marketable Title Act (MTA), is to ensure that "ancient records shall not fetter the marketability of real estate." *Id.* at subd. 5. The statute provides that no action affecting the possession or title

of real estate may be commenced against a claim of title which has been of record at least 40 years unless the adverse claimant has recorded notice of the adverse claim within that 40 year period. Minn.Stat. § 541.023, subd. 1.

This court first dealt significantly with the MTA in *Wichelman v. Messner,* 250 Minn. 88, 83 N.W.2d 800 (1957). We said that in order for the MTA to operate to extinguish any interest, two things are necessary:

First, the party desiring to invoke the statute for his own benefit must have a requisite "claim of title based upon a source of title, which source has then been of record at least 40 years," (*i.e.,* a recorded fee simple title). Secondly, the person against whom the act is invoked must be one who is "conclusively presumed to have abandoned all right, claim, interest * * *" in the property.

*Wichelman,* 250 Minn. at 112, 83 N.W.2d at 819 (quoting Minn.Stat. § 541.023, subd. 5).

Two years after the *Wichelman* decision, the legislature amended the MTA, adding subdivision 7, which defines "source of title."

[T]he words "source of title" as used in subdivision 1 hereof shall mean any deed, judgment, decree, sheriff's certificate, or other instrument which transfers * * * or purports to transfer * * * a fee simple title to real estate, including any such instrument which purports to transfer * * * a fee simple title from a person who was not the record owner of the real estate. *However,* any such instrument which purports to transfer * * * a fee simple title from a person who was not the record owner of the real estate to the grantee or transferee named in such instrument shall be deemed a source of title "of record at least 40 years" within the meaning of subdivision 1 *only if,*

---

1. The use of the "strawperson conveyance" was necessary in 1949 because the common law required that the four common law unities of interest, title, time and possession be satisfied. Essentially, this meant that all the joint tenants to a piece of real property had to acquire the same interest at the same time by the same instrument and that each joint tenant was entitled to possession. 6A Steven J. Kirsch, *Minnesota Practice* § 41.2 at 3 (3d ed. 1990). These common law requirements were abolished by statute in 1979. *Id. See* Minn.Stat. § 500.19, subds. 3 and 4 (1992).

during the period of 40 years after it was recorded, the following two conditions are fulfilled: *(1) another instrument was recorded which purports to transfer a fee simple title from said grantee or transferee to another person* and (2) no instrument was recorded which purports to be or confirm a transfer of any interest in the real estate by or from whoever was the record owner in fee simple immediately before the commencement of said period of 40 years. The purpose of the next preceding sentence is to limit the effect of erroneous descriptions or accidental conveyances.

Minn.Stat. § 541.023, subd. 7 (emphasis added).

The key question here is whether respondent has a "source of title," as that term is defined under the MTA, sufficient to allow him to extinguish the rights of those holding vested remainder interests. We do not believe he does.

The trial court concluded that the quitclaim deed, transferring whatever interest the strawperson had to Lena and Roy, served as the respondent's source of title. The court of appeals agreed, relying on subdivision 7 of the MTA to conclude that Roy is protected by the MTA from adverse claims by appellants. The court focused on language that allows a source of title to include

> "any instrument" which transfers * * * or purports to transfer * * * a fee simple title to real estate, *including any such instrument which purports to transfer * * * a fee simple title from a person who was not the record owner of the real estate.*

*Weber v. Eisentrager,* 490 N.W.2d 131, 134 (Minn.App.1992) (quoting Minn.Stat. § 541.023, subd. 7) (emphasis in the original).

The court of appeals recognized that Lena and Roy did not actually possess fee title when they executed their warranty deed to the strawperson. *Weber,* 490 N.W.2d at 134. It further recognized that a quitclaim deed could only transfer the interest held by the grantor, which in this case was a life estate. However, it concluded that whether respondent had a "source of title" depended not on whether the strawperson *actually* conveyed fee simple title to Lena and Roy, but whether the strawperson's quitclaim deed *purported* to transfer a fee simple title. *Id.* The court noted that Lena and Roy deeded her interest in the property with a warranty deed, albeit latently defective. *Id.* at 135. Consequently, the court of appeals, applying subdivision 7 of the MTA, ruled that the quitclaim deed purported to convey fee title and thus extinguished the claims of appellants.

Curiously, although respondent received favorable rulings from both the district court and the court of appeals, his reasoning differs from that of the lower courts. He asserts that the source of title was not the quitclaim deed, but the warranty deed from Lena and Roy to the strawperson, the first of the two transactions that took place in 1949 between Lena and Roy, and the strawperson.

■ The statute itself suggests the basis of the respondent's alternative theory. Under the lower courts' interpretation, respondent's source of title was the quitclaim deed conveyed by the strawperson back to Lena and Roy, the second transaction involving these parties. However, neither lower court apparently considered the additional requirements of subd. 7. Under that provision, where the claim of ownership originates in an instrument which purports to transfer a fee simple title from a non-record owner of the real estate, such transfer can serve as a source of title only if there has been a subsequent conveyance purporting to transfer fee simple title to another person. This requirement simply has not been met under the lower court's theory of ownership. No subsequent conveyance took place after the quitclaim deed to Lena and Roy, and thus no legal source of title was established under subd. 7.

■ Moreover, it is equally clear that under respondent's new theory, (*i.e.,* that his source of the title emanates from the first transaction, the conveyance by warranty deed from Lena and Roy to the

strawperson), his claim also fails. Although the requirement of a subsequent conveyance is met (the quitclaim deed from strawperson back to Lena and Roy), the statute plainly requires that the second instrument purport to transfer the fee simple title from the grantee (under this theory, the strawperson) to "another person." In this instance, the respondent cannot be "another person" because he is also the original grantor "who was not the record owner of the real estate." To allow him to claim the protections of MTA after such a series of purely formal transactions would be to subvert its very purpose, the protection of innocent landowners from ancient and remote claims. Further, it is undisputed that a strawperson receives no beneficial interest in property. *Wheeler v. Nelson*, 130 Minn. 365, 367, 153 N.W. 861, 861–62 (1915). Hence, even if Lena's conveyance to the strawperson is viewed as the source of title, because the strawperson received no beneficial interest or seisin, there was actually only one conveyance: from Lena to herself and respondent. Therefore, the requirement of subdivision 7 that the grantee who received the property interest from a non-record holder must convey to "another person" was not met by the transaction at issue.

This conclusion is supported by statutes and case law predating the MTA. In light of the axiom that one can only convey what one has, embodied in Minn.Stat. §§ 507.19 (1992) and 500.15 (1992), it appears impossible to create a source of title, (*i.e.*, fee simple title), where it previously did not exist. Generally, a remainder interest cannot generally be defeated by a life tenant. This rule undoubtedly is of ancient lineage.[2] Minn.Stat. § 500.15, subd. 1 states the following:

No expectant estate can be defeated or barred by any alienation or other act of the owner of the intermediate or precedent estate, nor by any destruction of

such precedent estate, by disseizin, forfeiture, surrender, merger or otherwise.

Similarly, Minn.Stat. § 507.19 states:

A conveyance made by a tenant for life or years, purporting to grant a greater estate than the tenant possessed or could lawfully convey, shall not work a forfeiture of the estate of a tenant for life or years, but shall pass to the grantee all the estate which such tenant could lawfully convey.

This court echoed this rule in *Ashbaugh v. Wright*, 152 Minn. 57, 188 N.W. 157 (1922):

The rule is well established that a deed by a life tenant conveys merely the life estate, although it purports to be a conveyance of the fee, and the grantee acquires thereunder no interest against the remainderman. * * * Where a life tenant attempts to convey the premises in fee, the possession of the grantee is not adverse to the remainderman until the termination of the life estate, for the reason that the latter has no right of possession until the particular estate is terminated, and he can have no right of action which depends upon the right of possession, until he is entitled to possession. * * * Nor will the statute of limitations commence its operation until that time.

*Id.* 152 Minn. at 61–62, 188 N.W. at 158–59 (citations omitted).

Furthermore, under *Wichelman*, certain requirements of the MTA are mitigated for remaindermen, and the rights of life tenants are limited. The court stated the following:

It seems clear to us that it would be unreasonable and inconsistent with the statute's purpose to include within the meaning of the word "title" the term for years and the life estate and thus compel the reversioner or the remainderman to file the statutory notice or be barred. It cannot be seriously argued that the hold-

---

**2.** Minn.Stat. § 500.15 is derived from a statute that existed while Minnesota was still a

territory.

er of the life estate or his tenant would have an estate of inheritance which would permit him to invoke the protections of the act. "Only those who possess a title which complies with the conditions of the statute are qualified to invoke its aid." *Lytle v. Guilliams,* 241 Iowa 523, 529, 41 N.W.2d 668, 672, 16 A.L.R.2d 1377. The legislature does not intend a result that is unreasonable; and it does not intend to violate the Minnesota or United States Constitutions. [Minn.Stat.] § 645.17 (1, 3).

*Wichelman,* 250 Minn. at 106, 83 N.W.2d at 815–16.

The MTA may appear to be contrary to these statutory and case law protections of the remaindermen, in some respects, inasmuch as it allows the purported transfer of a fee title from a life estate holder to be a valid source of title under some limited circumstances. Nevertheless, they do convey the state's historical preference for the protection of the estate of the remaindermen from assault by the life estate holder, and give support to our strict reading of the statute in this case.

Where the claimed source of title sought to be protected by the MTA is from a non-record owner of the real estate, the MTA imposes strict additional requirements. Neither of the transfers in this case meet those requirements, and, therefore, neither can serve to defeat the claims of the remaindermen in this case. Therefore, the decision of the court of appeals is reversed.

Reversed.